UNITED STATES of America

v.

Sylvester J. LEWIS, Appellant.

Nos. 74–1445, 74–1764.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 6, 1974.

Decided Feb. 12, 1975.

Ky. P. Ewing, Jr., Washington, D. C.
(appointed by this court), for appellant.

Jeffrey T. Demerath, Asst. U. S. Atty.,
with whom Earl J. Silbert, U. S. Atty.,
John A. Terry, Eugene M. Propper and
Charles E. Wagner, Asst. U. S. Attys.,
were on the brief, for appellee.

Before J. EDWARD LUMBARD,* Senior Circuit Judge for the Second Circuit, and McGOWAN and TAMM, Circuit Judges.

LUMBARD, Circuit Judge:

Appealing from his convictions for possession of metrazine and heroin with intent to distribute and for possession of marijuana,[1] Sylvester J. Lewis seeks a new trial on the ground that the government should not have been permitted to impeach him at trial on the basis of a statement he allegedly made to an arresting officer, because defense counsel had been led to believe by the government's pretrial representations that it knew of no statements made by Lewis upon arrest, or at least no statements which it "intend[ed] to use against him." We conclude, on all the circumstances of this case, that it was error for the trial judge to permit the government to introduce such evidence and that it requires reversal of the convictions and a new trial.

As a result of surveillance from inside a truck in the area of Division and Foote Streets, Northeast, on October 22, 1973, Metropolitan Police Officers saw Lewis engage in separate transactions with three persons which indicated that Lewis was selling drugs in violation of law. After the third transaction, the officers summoned police in a nearby scout car to make the arrest. As the car approached, Lewis was seen to hand a brown paper bag to one Regina Evans, and when they were arrested the bag was found to contain marijuana, ten packets of heroin, and a vial holding twenty preludin tablets. In Lewis's right sock police found two needles and syringes.

On December 5, 1973, defense counsel Marvin Fabrikant had a pretrial conference with Eugene Propper, a government attorney. The police report (form 163), which was the focus of the meeting, gave no indication that Lewis had made any statement upon arrest. Prior to trial, defense counsel also had access to grand jury and preliminary hearing testimony, as well as a second police report (form 251), none of which indicated that defendant had made any statements to arresting officers.

On December 10, 1973, Fabrikant filed a motion to suppress all tangible evidence seized upon defendant's arrest, on the ground that there had been no probable cause for the arrest; he also asked that any verbal or written statements made by defendant at the time of his arrest be suppressed on the ground that defendant was not sufficiently advised of his right against self-incrimination and did not knowingly or voluntarily waive that right. No pretrial hearing was held on the motion, as it was finally agreed that the court would decide the motion on the evidence given at trial. On February 1, 1974, the day originally set for trial, the government filed a three-page response in which its sole comment on the self-incrimination issue was the following footnote on page two:

"The defendant did not make any statements at the time of his arrest which the government intends to use against him."

The three-day trial before Judge Gasch and a jury commenced on February 4, 1974. On its direct case the government introduced no evidence of any statement made by Lewis.

Lewis testified in his own defense and denied any talk or transaction regarding drugs. He said that the bag, in which police had found drugs, did not belong to him. He maintained that it had been lying abandoned in the street when Regina Evans pointed it out to him and asked him to hand it to her, which he did. He said that he was holding the syringes and needles for a friend. Final-

---

* Sitting by designation pursuant to Title 28 U.S.Code Section 294(d).

1. 21 U.S.C. § 841(a); 33 D.C.Code § 402. Lewis was sentenced to an indeterminate term of imprisonment, not to exceed ten years, under the Narcotic Addict Rehabilitation Act, 18 U.S.C. § 4253.

ly, although admitting that in 1972 he had been addicted to narcotics, he maintained that at the time of his arrest, on October 22, 1973, he was not addicted.

On cross-examination Assistant United States Attorney Charles Wagner asked Lewis:

"Now at the time you were arrested, didn't you tell the police officer that you used narcotics and that you shot in your ankle?"

Defense counsel immediately objected, and when the objection was overruled, moved for a mistrial, on the ground that the government had indicated in its response to the suppression motion that no Miranda statements would be used against the defendant. The government, while admitting that it knew of Lewis's statement by the time it filed its response to the suppression motion,[2] argued that the footnote accurately reflected its intention not to use Lewis's statement in its initial presentation, but to save it for rebuttal if any. It also argued that the statement was admissible to impeach Lewis under Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), even assuming Miranda warnings had not been given. In *Harris*, the Supreme Court limited the scope of the exclusionary rule with regard to statements obtained in violation of Miranda and held that a defendant who takes the stand may be confronted with such statements, even though the exclusionary rule would bar the government from offering them as part of its main case.

The trial court denied the motion for a mistrial, holding the statement admissible under *Harris*. When defense counsel shortly thereafter renewed his argument that he had been misled by the government's footnote, the trial judge stated, "I don't know that it is misleading if you read *Harris*."

Following Lewis's denial of the statement attributed to him, he was asked to lower his socks and to display his ankles, which had marks on them, to the jury. In rebuttal, over objection, the government then recalled the arresting officer, Thomas Burke, who testified that he had seen marks on Lewis's ankle when he had taken the needles and syringes from Lewis's sock. Burke stated that Lewis, having been advised of his rights, had later said that he had the abscesses because he fired heroin and "shot-up" in his ankles and legs.

After both sides had rested, Fabrikant again asked for a mistrial on the ground that he had been misled. He referred not only to the government's written representation, but to his notes of the pretrial conference with Propper.[3] He

---

**2.** Propper, at the pretrial meeting on December 5, 1973, was not aware of Lewis's statement, and there is no suggestion that other government counsel on the case were aware of the statement at that time.

**3.** Fabrikant, referring to his notes from the meeting stated:

"Mr. Propper did not give me the 163, he read it to me, and I had written down in substance what he told me. I asked him if there were any ID problems, and he said, 'no'. I asked him if there were any statements, and he said, 'no', I asked him if there was any Brady material, and he said, 'no' ".

Fabricant also characterized the meeting as a "discovery conference", presumably referring to local District Court Rule 2–5(a) which provides:

"It shall be the duty of every defense counsel, whether appointed or retained, to consult with the Assistant United States Attor-

ney assigned to the case prior to the first status call on a criminal case. At that time counsel shall attempt to obtain from the Assistant United States Attorney informal discovery as to matters which the defense would be entitled under the Federal Rules of Criminal Procedure and the applicable statutes and cases. No discovery motion shall be heard unless it states that defense counsel has sought the requested relief from the Assistant United States Attorney assigned to the case and that the Assistant United States Attorney has not complied with such request."

Although Assistant United States Attorney Wagner reported at trial that Propper had not regarded this as a "discovery conference," but rather as a meeting simply to hand over a copy of the 163, the colloquy at trial strongly suggests that Fabrikant reasonably could have assumed that the government knew of no such statements at that time and that the government would inform him if it subse-

also stated that the grand jury and preliminary hearing testimony, as well as the second police report, had contributed to his belief that the government knew of no relevant statements made by Lewis at the time of his arrest. Fabrikant argued that the fact that he was misled affected his advice to his client whether to take the stand. Assistant United States Attorney Wagner denied that any misrepresentation had been made. Even if there had been a misunderstanding with respect to whether the government had evidence of any relevant statement, he maintained that any error was harmless since the statement in question was not discoverable under Rule 16(a)(1) of the Federal Rules of Criminal Procedure as its substance had never been written down or recorded.[4] The trial court, without additional comment, reaffirmed its earlier ruling.

It is of the utmost importance that the government respond accurately and unambiguously to defense counsel's inquiries and motions relating to statements, both written and oral, made by a defendant to the authorities. The government's answer to the defense motion to suppress, that "[t]he defendant did not make any statements at the time of his arrest which the government intends to use against him", was an equivocation. Taken together with the pretrial conference between Fabrikant and Propper, as well as with the grand jury testimony,

the preliminary hearing testimony, and a second police report—none of which indicated any statement by Lewis,—it was only natural and reasonable that Fabrikant would construe the government response to mean that no such statement would be used at any time during the trial.

Under all the circumstances the trial judge should have excluded any reference to the defendant's oral statement, whether presented on the government's case or brought forth in any way at a later stage of the trial.

Had Fabrikant not been misled with respect to whether Lewis had made any relevant and possibly incriminating statement upon arrest, his trial preparation and strategy might well have been different, especially as he might have been able to have the court require the government to disclose the substance of the statement. The government argues that the statement was not discoverable as the government had no recording or writing which contained even the substance of what defendant had said to Officer Burke, but we are not convinced that a trial court might not have ordered disclosure here.

Although Rule 16(a) speaks of "written or recorded statements or confessions made by the defendant," the defendant does not have to be aware that

---

quently discovered that Lewis had made any statements at the time of his arrest. As local Rule 2–5(a) is intended to make the discovery process largely informal and extrajudicial, an informal request for discovery pursuant to that rule should impose a continuing duty on the prosecution, much as if a formal discovery order had been entered, see Fed.R.Crim.P. 16(g).

The explanation for the government's failure to inform Fabrikant appears to be that it did not believe the statement was even arguably discoverable. However, as indicated below, we cannot accept the government's narrow interpretation of the court's authority to compel disclosure of a defendant's statements to authorities, and thus the defense should have been alerted that the government was withholding information which a court might have ordered disclosed. See Fleming v. United States, 135 U.S.App.D.C. 131, 417 F.2d

548, 550 (1969) (under local rule 2–5(a) the government must reveal the existence of material it withholds where there might be a legitimate dispute as to the applicability of the rules, so that defense counsel may fully utilize the right to make formal application to the court for discovery).

4. Rule 16:

(a) *Defendant's Statements* . . . .
Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph any relevant (1) written or recorded statements or confessions made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government . . . .

notes are being made of what he says,[5] and the rule has been held to authorize discovery of a known government agent's notes of what a defendant said to him upon arrest, even though the notes were made sometime after the conversation and gave only the substance rather than the exact words of what the defendant said.[6] There would seem to be little reason to draw a line between such a situation and the present case where the officer related information about Lewis's statement orally to the prosecutor. In both cases the prosecutor can call the government officer to testify as to the statement. In neither case would the admission or exclusion of the evidence under *Harris* and *Miranda* turn on how the prosecution had "preserved" what defendant had said, whether in written notes or in the memory of an officer. Indeed drawing such a distinction for the purpose of determining whether information was discoverable would only encourage investigators and prosecutors who sought the advantage of surprise at trial to avoid reducing their recollections of a defendant's statements to writing, thus frustrating the purpose of Rule 16(a).

Discovery of the government's evidence of relevant and incriminating statements made by a defendant to police is of the utmost importance to the preparation of the defense as it must be kept in mind that given the traumatic circumstances of arrest the memory of a defendant as to exactly what occurred may well be hazy and defective. Even where a defendant's memory is crystal clear, it is not every defendant who chooses to tell his own attorney all that he remembers.

Moreover, a principal purpose of discovery is to advise defense counsel what the defendant faces in standing trial; it permits a more accurate evaluation of the factors to be weighed in considering a disposition of the charges without trial. While we cannot know whether such disclosure would in this case have led to disposition without trial, we do know that such disclosure does result in such dispositions in many cases.

■ The importance of disclosure of a defendant's statements to authorities in the preparation of his defense and in promoting a fairer and more efficient administration of the criminal justice system is now generally thought to outweigh the chance that disclosure may increase the likelihood of perjury by a defendant in those cases that go to trial. See ABA Standards, Discovery and Procedure Before Trial, §§ 1.2, 2.1(a)(ii), and commentary thereto at 34–46, 58–64 (1970)[7]; Proposed Amendments to the

---

5. See Advisory Comm. Note, Fed.R.Crim.P. 16 ("The defendant is not required to designate because he may not always be aware that his statements or confessions are being recorded.").

6. E. g., United States v. Fallen, 498 F.2d 172 (8th Cir. 1974) (reh. and reh. en banc denied); United States v. Scharf, 267 F.Supp. 19 (S.D. N.Y.1967); United States v. Morrison, 43 F.R.D. 516 (N.D.Ill.1967). But see, e. g., United States v. Elife, 43 F.R.D. 23 (S.D.N.Y.1967) (agent's notes of defendant's statement must be substantially verbatim and have been made fairly contemporaneously with statement in order to come within Rule 16(a)(1)).

The rule has also been held to support disclosure of pre-arrest government tape recordings of conversations between the defendant and a third party. E. g., United States v. Crinsona, 416 F.2d 107, 114–15 (2d Cir. 1969), cert. denied, 397 U.S. 961, 90 S.Ct. 991, 25 L.Ed.2d 253 (1970).

7. Section 2.1(a)(ii) provides:
   2.1 Prosecutor's Obligations.
   (a) Except as is otherwise provided as to matters not subject to disclosure (Section 2.6) and protective orders (Section 4.4), the prosecuting attorney shall disclose to defense counsel the following material and information within his possession or control:

   \*    \*    \*    \*    \*    \*

   (ii) any written or recorded statements and the substance of any oral statements made by the accused   .   .   . .
   The term statements is not defined in the ABA Standards, but the Advisory Committee notes that it should be given a broad meaning "consistent with overriding purpose for granting broad pretrial discovery to the accused." ABA Standards, Discovery and Procedure Before Trial 63 (1970).

Federal Rules of Criminal Procedure, Rule 16(a), 416 U.S. 1005 (1974) and H.R. Doc.No.93–292, 93d Cong., 2d Sess. (1974).[8] See also United States v. Bryant, 142 U.S.App.D.C. 132, 439 F.2d 642, 649 & nn. 13–14 (1971); United States v. Crinsona, 416 F.2d 107, 114–15 (2d Cir. 1969), cert. denied, 397 U.S. 961, 90 S.Ct. 991, 25 L.Ed.2d 253 (1970); Loux v. United States, 389 F.2d 911 (9th Cir.), cert. denied, 393 U.S. 867, 89 S.Ct. 151, 21 L.Ed.2d 135 (1968); United States v. Projansky, 44 F.R.D. 550 (S.D. N.Y.1968); United States v. Morrison, 43 F.R.D. 516 (N.D.Ill.1967).[9]

We thus conclude that the language of Rule 16(a) referring to written or recorded statements should not be read as precluding a trial judge from ordering the disclosure of the substance of a defendant's oral, unrecorded statements made to arresting officers.[10]

Although the government presented a strong case even without the use of the statement, we cannot say that the error was harmless or did not prejudice Lewis, as use of the statement not only impeached Lewis's credibility in general, but undermined a significant element in his defense—namely that he had not been addicted at the time of his arrest. See United States v. Padrone, 406 F.2d 560 (2d Cir. 1969). On the retrial, however, now that the defendant knows that the government can produce evidence of the defendant's oral statement made at the time of his arrest, the government is not restricted as to the proper use of that evidence.

To preclude such use here would impose a wholly unwarranted sanction contrary to discovery of the truth.

Reversed.

8. Proposed amended rule 16:
(a) Disclosure of evidence by the government.
(1) Information subject to disclosure.
(A) Statement of defendant.—Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant . . . ; the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent . . .
Although the clause relating to disclosure of the substance of oral statements which the government "intends to offer in evidence" could arguably be read to refer only to the government's case in chief, we believe it should be read more broadly to encompass relevant and incriminating statements which the government plans to withhold to use to impeach the defendant, should he testify. There is no suggestion in the Advisory Committee Note that the disclosure required here of a defendant's statements to police is to be any narrower than that recommended in the ABA Standards, which are cited approvingly by the Committee. Moreover, here the draftsmen omitted any specific reference to the terms case in chief or direct case, although in the amendment to Rule 16(b)(1)(A) relating to disclosure by the defendant they referred expressly to material the defendant intends to "introduce as evidence in chief."

It should also be noted that the Advisory Committee Note to the proposed amendment to Rule 16 makes it quite clear that the Rule is to prescribe only the minimum discovery to which either party is entitled; the district court judge still has the discretion to order broader disclosure in appropriate cases.

9. It should be noted that where the statement in question is made to a government agent known to the defendant, the interests in favor of disclosure are stronger than where the identity of an informer or the security of potential government witnesses may be involved. Cf. United States v. Dorfman, 53 F.R.D. 477 (S.D.N.Y.1971).
Moreover, in many cases all statements by a defendant to police may have to be disclosed because they are relevant to a Miranda suppression motion and a determination of the circumstances in which particular statements, which are the focus of the motion, were made. In this case, however, the government had indicated that it was not going to raise any Miranda problems at trial.

10. Cf. Advisory Comm. Note, Proposed Amendment to Rule 16 (the amended rule is not meant to limit in any way the court's authority to order broader disclosure in appropriate cases).
We decline to follow the suggestion in United States v. Dioguardi, 332 F.Supp. 7, 17 (S.D. N.Y.1971), that a defendant's oral, unrecorded statement to police is not discoverable.