**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Carlos ARCENTALES,
Defendant-Appellant.**

No. 75–3140.

United States Court of Appeals,
Fifth Circuit.

June 7, 1976.

Theodore J. Sakowitz, Federal Public Defender (Court Appointed Not Under Act), Michael J. Rosen, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Robert W. Rust., U. S. Atty., Barbara D. Schwartz, Charles Intriago, Grafton B. Wilson, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before GEWIN, COLEMAN and GOLDBERG, Circuit Judges.

GEWIN, Circuit Judge:

Appellant Carlos Arcentales was found guilty by a jury on both counts of an indictment charging him with importing cocaine [1] and possessing the same with intent to distribute.[2] On appeal he argues that he is entitled to a new trial because of the prosecution's failure to disclose to defense counsel prior to trial the full extent of his post-arrest statements concerning his knowledge of the cocaine. We affirm.

Arcentales, a Spanish-speaking native of Ecuador, presented himself for customs inspection at Miami International Airport on June 4, 1975. A customs agent noticed a white powdery substance in his suitcase; the substance was field tested and proved to be cocaine. Thereafter a search of the appellant's suitcase disclosed over 2.9 kilograms of 97% pure cocaine (with an estimated street value in excess of one million dollars) secreted under a false bottom.

Arcentales was taken to a room at the airport. After a translator advised him of his *Miranda* rights, he was questioned by government agents for approximately two hours. Customs Inspector Pedro Torres served as interpreter; Drug Enforcement Administration agent Frank Torres and other agents directed the questioning. After the interview Frank Torres prepared the following written summary:

> Subject ARCENTALES was interviewed by Customs Inspector Pedro Torres at the instruction of S/A's [Special Agents] Torres [Frank Torres] and Putsche. Pedro Torres told S/A's Torres and Putsche that ARCENTALES had received the suitcase in Ecuador from one Roberto YCAZA, and was to be given $2,000 to bring the suitcase into the U. S. Pedro Torres further stated that ARCENTALES was to fly to Los Angeles and be met by a man known only to ARCENTALES as JOSELITO. *ARCENTALES claimed no knowledge of the cocaine.* (Emphasis added.) [3]

Within a week after the appellant's arrest a preliminary hearing was conducted; the magistrate found probable cause to bind the appellant over to the grand jury. DEA agent Frank Torres testified at this hearing. In response to defense counsel's questions, he stated that the appellant had made statements to Pedro Torres, the interpreter, and that the appellant had never acknowledged knowing that there was cocaine in the suitcase.

Thereafter the magistrate issued a standing discovery order obligating the government to disclose to the appellant, *inter alia*, all written or recorded statements, admissions, or confessions of the appellant.[4] This order also imposed on the government the continuing duty to reveal immediately all newly-discovered information or material within the scope of the discovery order. At a pre-trial discovery conference the government supplied defense counsel with a copy of the laboratory report concerning the drugs seized from Arcentales together with the previously mentioned summary prepared by DEA agent Frank Torres.

**1.** In violation of 21 U.S.C. §§ 952(a) and 960(a)(1).

**2.** In violation of 21 U.S.C. § 841(a)(1).

**3.** It should be observed that this 12 line statement is based on interrogation for a period of 2 hours. Agent Frank Torres, who wrote the summary, did not speak Spanish and did not understand the conversation between appellant and Pedro Torres.

**4.** The language in the discovery order tracked the language of F.R.Crim.P. 16, as it existed at that time. *See* note 6, *infra.*

The appellant's trial commenced on July 30, 1975. During his opening statement defense counsel made the following argument:

Mr. Arcentales need not take the stand. He has a Constitutional right not to do that. The Government must prove its case without any statements made by him, but he has made statements. He made statements at the time of his arrest, he has made statements after his arrest, and he will get on that witness stand and swear under oath the truth of those statements. He will swear that he did not know what was in that suitcase and he will tell you how he got that suitcase, what he was going to do with it, where he was going, and what he was doing here. . . . If he did not know that there was cocaine in the luggage, then you must find him not guilty. That is the crux of this question, the defendant's knowledge.

When the government began its case-in-chief, one of the first witnesses called was the interpreter Pedro Torres, who was questioned concerning his interview with the appellant at the time the latter was apprehended in the airport. Pedro Torres testified that Arcentales had initially denied knowing that there was any cocaine concealed in the suitcase. Subsequently, the interpreter testified, the appellant had asked what benefits could be derived from telling the truth and whether the agents could assure him that nothing concerning his trouble would be published in the newspapers in Ecuador. Defense counsel immediately objected to this line of testimony and moved for a mistrial on the ground that it had not been mentioned in the report provided defense counsel at the discovery conference.

Defense counsel's motion for a mistrial was overruled, and the prosecution resumed questioning Pedro Torres. The interpreter testified that when the appellant was advised that the agents had no intention of publishing anything in Ecuador about his legal troubles in this country, he had admitted knowing that there was "stuff" in the suitcase. Pedro Torres testified that Arcentales had said that he was to deliver the suitcase to a man in Los Angeles, and that he was to receive $2000 upon delivery—not as payment, but as a loan. With this money he intended to purchase clothing and other items that he could re-sell in Ecuador to pay for his trip. The witness related that Arcentales had claimed not to know the identity of the person to whom delivery was to be made. The intended recipient, however, would recognize Arcentales, who had been instructed to wear distinctive clothing and to walk out of the Los Angeles airport "on the right side" and drop the suitcase, whereupon the intended recipient would approach him and say, "Are you Joselito?"

Upon completion of this testimony defense counsel moved to suppress the testimony of Pedro Torres and for a mistrial, stating two grounds for the motions: (1) that the appellant's statements to the agents had not been freely and voluntarily given because government agents had promised not to publish anything about the offense in the Ecuadorian newspapers;[5] and (2) that the government had engaged in prosecutorial misconduct by providing defense counsel with the misleading case report stating that the appellant had denied knowing about the cocaine when in fact he had purportedly admitted knowing that "stuff" was secreted in the suitcase. A hearing was conducted outside the presence of the jury. Pedro Torres was shown the case report prepared by Frank Torres; the interpreter stated the report was basically correct, but that it was not complete. Frank Torres was also examined at this hearing; he testified that he had prepared his report after the interview with Arcentales, and that he had included only what he thought was "pertinent." He acknowledged that the appellant had in fact stated that he knew there was "contraband" in the suitcase, although he never admitted knowing that it was cocaine. The trial court subsequently rejected the voluntariness ar-

---

5. This argument has been abandoned on appeal.

gument and denied the motion to suppress based on that ground. He reserved ruling on the issue of governmental abuse, but at the close of all the evidence he denied the motion for mistrial, stating:

> . . . I have given consideration to . . . the contention by the defendant that fundamental due process was denied the defendant by the fact that [in] Mr. Frank Torres' summary of the position of the defendant in his case agent's report, it was cited that the defendant denied knowledge of the cocaine being in his suitcase, when it appears that Mr. Torres apparently knew that the defendant had admitted to Pedro Torres, the agent interviewing him, that there was some kind of contraband in the suitcase.

> Frank Torres, the case agent, does not speak Spanish, and viewing the . . . totality of the circumstances and the problem of language and so forth, I do not find that the succinctness of the case agent's statement and the omission apparently about his having heard the defendant mention contraband rises to such a level as to deny fundamental due process and deny a fair trial to the defendant, so I am denying the motion for a mistrial.

The defense presented the testimony of two witnesses: the appellant's brother, who provided character evidence, and the appellant himself. The appellant testified that he had been given the suitcase by a friend in Ecuador named Hugo Silva, whom he had known for about three months. He stated that he had used the suitcase because he did not have one large enough for a trip to the United States. Silva had offered to lend Arcentales $2000 with which he could purchase items in the United States. At the last minute, however, Silva claimed he did not have enough money to lend to the appellant. Instead, Silva stated that he had a friend in Los Angeles who would be willing to lend Arcentales the money and suggested that the appellant go to Los Angeles to meet the friend. In addition, this friend would help Arcentales get to know Los Angeles and buy items for resale. Arcentales knew only that this friend's name was Joselito and that he was a tall man with dark, wavy hair and a black mustache. He denied knowing that there was cocaine in the suitcase; he claimed that he was not supposed to give the suitcase to Joselito. On cross-examination Arcentales admitted that he could have saved several hundred dollars by purchasing the merchandise in Miami rather than by flying across the country to Los Angeles. He said that he had chosen to go to Los Angeles instead because he did not have a contact willing to help him in Miami.

After deliberating for approximately forty-five minutes, the jury returned with the verdicts of guilty on both counts. Arcentales was subsequently sentenced to two concurrent four-year terms of imprisonment to be followed by a special parole term of three years.

■■■ We share the trial judge's concern about the government's conduct in this case. Nevertheless, our examination of the record convinces us that the prejudice, if any, flowing to the appellant from the failure to disclose the inculpatory statement was insubstantial. Consequently, we find that the trial court did not err in denying the appellant's motion for a mistrial.

It is unnecessary for us to decide whether the government was *required* to disclose the appellant's inculpatory oral statement under F.R.Crim.P. 16(a) as it existed at the time of trial.[6] *Compare United States v. Dioguardi*, 332 F.Supp. 7, 17 (S.D.N.Y.1971) (oral statements not discoverable under prior Rule 16) *with United States v. Lewis*, 511 F.2d 798 (D.C.Cir.1975) (prior Rule 16 should not be read as precluding a trial

---

6. At the time of trial, F.R.Crim.P. 16(a) provided:

> Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph any relevant (1) written or recorded statements or confessions made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government . . .

judge from ordering the disclosure of the substance of a defendant's oral, unrecorded statements made to arresting officers). The rule has since been amended and now mandates the discovery of the substance of a defendant's statements that the government intends to introduce at trial.[7] Clearly, disclosure of the oral statements would have been the preferable course of action. Even if disclosure had been required, however, a failure to comply literally with the discovery order would not be reversible absent a showing that the error was prejudicial to the substantial rights of the defendant. *United States v. Saitta,* 443 F.2d 830, 831 (5th Cir. 1971), *cert. denied,* 404 U.S. 938, 92 S.Ct. 269, 30 L.Ed.2d 250 (1971); *United States v. DeSimone,* 452 F.2d 554 (5th Cir. 1971), *cert. denied,* 406 U.S. 959, 92 S.Ct. 2067, 32 L.Ed.2d 346 (1972); *Hansen v. United States,* 393 F.2d 763, 770 (8th Cir. 1968), *cert. denied,* 393 U.S. 833, 89 S.Ct. 103, 21 L.Ed.2d 103 (1968). The appellant has failed to demonstrate that he suffered significant prejudice due to the lack of disclosure.

We think it highly significant that the existence of the inculpatory statement became known during the government's case-in-chief. The government was not lying in wait with statements that could impeach the defendant if he decided to testify. Unlike *United States v. Lewis, supra,* and *United States v. Padrone,* 406 F.2d 560 (2d Cir. 1969), where the defendants were not confronted with the theretofore undisclosed inculpatory statements until they took the stand, defense counsel in the case *sub judice* became aware of the incriminating admission well before he had begun to present the defense. Consequently, "[w]e are not here concerned with such vital matters as a defendant's decision to take the stand, which might result in substantial and irrevocable prejudice," *see United States v. Cirillo,* 499 F.2d 872, 883 (2d Cir. 1974), *cert. denied,* 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974); when defense counsel learned of the incriminating statement, it was still not too late for him to advise his client not to testify. His crucial decision to the contrary was made with full knowledge of the incriminating admission.

The appellant claims he was prejudiced because the inculpatory statement contradicted his counsel's opening argument. We do not believe that this inconsistency alone is so prejudicial that a mistrial was warranted. Moreover,

> [a]ny possibility that the jury might believe that [appellant's] counsel deliberately tried to mislead them in his opening could have been dissipated by the court's explaining to the jury what had happened. Yet [the defendant] made no request for an explanation.

*United States v. Cirillo, supra* at 883.

The discovery process does not obviate the need for thorough trial preparation. As we said in *Castillo v. United States,* 409 F.2d 762, 765 (5th Cir. 1969), "The right to discovery of statements is not a guarantee that the statement is complete in all respects." *See also United States v. Prieto,* 505 F.2d 8 (5th Cir. 1974); *United States v. Cruz,* 478 F.2d 408, 412 (5th Cir. 1973), *cert. denied sub nom. Fuentes v. United States,* 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973). This is not a case where defense counsel had no way of learning about his client's incriminating remarks. *See United States v. Smith,* 480 F.2d 664, 668 (5th Cir. 1973). To the contrary, at the preliminary hearing, more than six weeks prior to trial, defense counsel learned that Arcentales had

---

**7.** F.R.Crim.P. 16(a)(1)(A) now provides:

> Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government; the sub-

> stance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent . . . .

The amendments to this rule did not become effective until December 1, 1975, after the trial of this case.

made statements to Pedro Torres. He could easily have contacted the witness himself and learned the substance of his client's statements.[8] *See United States v. Stewart,* 513 F.2d 957, 960 (5th Cir. 1975); *United States v. Bolden,* 514 F.2d 1301, 1312 (D.C.Cir.1975).

Finally, we note that this was not a close case. The evidence of guilt was formidable and the defendant's story totally incredible. Even if we were to remand this case for a new trial, "now that the defendant knows that the government can produce evidence of the defendant's oral statement made at the time of his arrest, the government [would not be] restricted as to the proper

use of that evidence." *United States v. Lewis, supra,* 511 F.2d at 803. In sum, we conclude that although the government should have informed defense counsel that the appellant had made inculpatory statements to Pedro Torres, on the facts and in the circumstances of this case the failure to do so was harmless beyond a reasonable doubt.

AFFIRMED.

---

8. At oral argument it was asserted without contradiction that the government agents' names were known to defense counsel and that the agents were employed at a location only 15 minutes' distance from the courthouse where the trial took place. Of course the government witnesses were present at trial and subject to interview by defense counsel.