**UNITED STATES of America, Appellee,**

**v.**

**William Thomas GLADNEY, Defendant, Appellant.**

**No. 77–1095.**

United States Court of Appeals, First Circuit.

Argued June 3, 1977.

Decided Sept. 26, 1977.

---

Willie J. Davis, Boston, Mass., by appointment of the Court, for defendant, appellant.

James E. O'Neil, Asst. U. S. Atty., Boston, Mass., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, LAY, Circuit Judge,* CAMPBELL, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

William Thomas Gladney appeals from a conviction for possessing and distributing heroin in violation of 21 U.S.C. § 841(a)(1). He seeks a new trial on the ground that the district court erred in allowing the Government to introduce at the last minute the tape of a telephone conversation between Gladney and another, the existence of which had not been disclosed in pre-trial discovery procedures. By revealing that Gladney was dealing in drugs two years earlier, the tape contradicted Gladney's sworn testimony that he had never dealt before.

On the first day of trial, the Government presented evidence that Gladney had sold heroin to Special Agent Vinton at the instance of an informant named Alario. After the Government rested, Gladney took the stand. He admitted to the transaction but claimed entrapment, painting himself as a user who had never before dealt, and who sold to Vinton only to do a personal favor for Alario, an old friend and fellow user.

On the evening following the first day of trial, after both sides had rested, Agent Vinton returned to the Drug Enforcement Administration Office where he discussed the case with other agents. What then occurred, as stated in counsels' stipulation, is that "[d]uring this discussion the memory of Special Agent Thomas Battell was triggered about a recorded conversation in which Gladney had been a participant". The recording was then played for Agent Vinton who recognized the defendant's voice. The recording was of a telephone conversation two years earlier between an informant named "Lisa", a D.E.A. agent named Paul Maloney, and someone using the name "Tony". It was clear from the conversation that Gladney was then dealing in drugs, and while unrelated to the crime for which Gladney was on trial, the taped conversation was relevant to contradict his asserted lack of predisposition.

The Government offered the tape the next day when the trial resumed, Agent Maloney being on hand to authenticate it. The defense objected that as Lisa's whereabouts were unknown, it could not verify Agent Maloney's testimony that she had consented to the recording of the telephone call. And, claiming "prejudicial surprise", the defense challenged the Government's failure to have produced the recorded conversation earlier for its inspection under amended Rule 16 of the Federal Rules of Criminal Procedure. When, however, the

* Of the Eighth Circuit, sitting by designation.

court inquired as to whether the defense wished a continuance, Gladney replied in the negative. After a voir dire inquiry into the circumstances surrounding the eleventh hour production of the tape, the court determined that it was admissible, and it was played before the jury.

On appeal Gladney wisely does not press the argument that there was insufficient proof of Lisa's consent. A conversation recorded without warrant may be admissible if one of the parties consents to the interception. 18 U.S.C. § 2511; *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). Agent Maloney testified that Lisa was a Government informer and that she had consented. An informer's later unavailability does not prevent his or her consent from being shown by other evidence. *United States v. Bonanno*, 487 F.2d 654, 658–59 (2d Cir. 1973); *United States v. Rangel*, 488 F.2d 871 (5th Cir.), *cert. denied*, 416 U.S. 984, 94 S.Ct. 2386, 40 L.Ed.2d 760 (1974). There is no indication that Lisa was coerced; a promise of leniency would not amount to coercion. *United States v. Silva*, 449 F.2d 145 (1st Cir. 1971).

Gladney's stronger contention is that the tape was an item which Fed.R.Crim.P. 16 required the Government to disclose to the defense prior to trial, and that failure to do so should have led the court to exclude it. Fed.R.Crim.P. 16(a)(1)(A) requires the Government upon a defendant's request to "permit the defendant to inspect and copy . . . any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government". There was in effect in the District of Massachusetts a Uniform Order for Automatic Discovery in Criminal Cases requiring production of the same materials as are set out in Rule 16. The Government does not question, and we may assume, that the Order was tantamount to a defense request in triggering Rule 16 discovery duties. Pursuant to the Order, the Assistant United States Attorney wrote to Gladney prior to trial that the Government was "not in possession of any relevant written or recorded statements or confessions made by the defendant in this case". Several weeks later he modified this advice by sending Gladney's attorney a copy of certain statements of Gladney's not including the "Lisa" tape. About three weeks before trial, Gladney moved to subpoena Alario, alleging in the motion that his testimony bore upon "defendant's position that he was entrapped into the commission of the crime alleged". A copy of the motion was sent to the Government. A week before trial, defense counsel conferred with the Assistant United States Attorney, Agent Vinton and Alario. During this conference, defense counsel says that he explained, and discussed with Alario, Gladney's proposed entrapment defense. The defense was not told of the tape until the morning it was offered in evidence.

Counsel have stipulated, and we accept, that neither the Assistant United States Attorney nor Agent Vinton were actually aware of the "Lisa" tape prior to trial. However, provided the tape was "relevant", the Government had a duty to produce it not only if its existence was actually known to the prosecutor but if its existence might have become known to him "[in] the exercise of due diligence". Fed.R.Crim.P. 16(a)(1)(A). On the question of relevance, the Government argues that the tape fell outside the scope of Rule 16 discovery since it was material to the crime charged only in the limited sense of rebutting Gladney's entrapment defense raised at trial. Some courts have tended to hold that a defendant's statements admissible only in rebuttal are not relevant under the Rule. *See United States v. Skillman*, 442 F.2d 542, 550 (8th Cir.), *cert. denied*, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971); *United States v. Hodges*, 480 F.2d 229 (10th Cir. 1973); *United States v. Federman*, 41 F.R.D. 339 (S.D. N.Y.1967). Others look more broadly to the importance of the material being sought without reference to the stage of use. *United States v. Caldwell*, 543 F.2d 1333

(D.C. Cir. 1974). Under the former line of authority, were we to follow·it, if Gladney had not communicated his entrapment defense to Government counsel several weeks before trial, we would decide for the Government solely on the ground of lack of relevancy. But Gladney did to some degree advise the Government before trial that he claimed entrapment, a defense involving the issue of predisposition as to which Gladney's other drug dealings would be relevant. It is a much closer question whether, after being so alerted, the Government may disclaim relevancy.

With respect to whether or not, assuming relevancy, a diligent prosecutor should have known about the tape, we suspect he should. While the subject was known as "Tony" in the tape, at least one agent knew, or suspected, that Tony and Gladney were the same, and one would expect agents in the same office of the same agency in the same locale to have some system for keeping track of prior investigations of the same subject. The fact that the tape was so quickly located when needed suggests that it was well within the Government's capabilities to have found it earlier, although, of course, how hard the prosecutor was obliged to look at an earlier time would depend on his reasonable perceptions of relevancy at that time. In any case, a prosecutor's overlooking of readily available, relevant statements in Government hands could not be condoned. *See United States v. Padrone*, 406 F.2d 560 (2d Cir. 1969); *United States v. Cirillo*, 499 F.2d 872 (2d Cir.), *cert. denied*, 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974). *Cf. Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1971); *United States v. Sutton*, 542 F.2d 1239 (4th Cir. 1976); *United States v. Ott*, 489 F.2d 872 (7th Cir. 1973).

We do not decide finally, however, whether the tape was relevant and, with due diligence, discoverable under Rule 16(a)(1)(A). Assuming *arguendo* that such was the case, we remain satisfied that the district court did not abuse its discretion by admitting the tape after first inquiring about a continuance and being advised by Gladney that none was desired. Violation of Rule 16(a)(1)(A), like the violation of other discovery rules, calls for the application of differing remedies depending upon the seriousness of the violation and the amount of prejudice to the defendant. In recognition of this, Rule 16(d)(2) provides for different remedies for non-compliance including—as an alternative to outright rejection of the non-disclosed evidence—a continuance.

The Government did not act in bad faith here—as, for example, by saving the tape for rebuttal, after its relevance was known, in deliberate violation of duties under Rule 16. Gladney, moreover, was not deprived of any meritorious defense by the Government's conduct, and his claim of "prejudicial surprise" is undercut by his refusal of a continuance. *United States v. Cowles*, 503 F.2d 67 (2d Cir. 1974), *cert. denied*, 419 U.S. 1113, 95 S.Ct. 790, 42 L.Ed.2d 811 (1975); *United States v. Andrews*, 381 F.2d 377 (2d Cir. 1967), *cert. denied*, 390 U.S. 960, 88 S.Ct. 1058, 19 L.Ed.2d 1156 (1968). Gladney argues that a continuance would have "availed him naught" since his only possible attack on the tape was lack of consent and this required the presence of Lisa, who was unavailable. But nothing indicates that earlier disclosure of the same evidence would have made Lisa any the more available; and it is not contested that the "Tony" on the tape was, in fact, Gladney. Gladney's claim of prejudice boils down to the argument that had his counsel learned earlier of the "Lisa" tape he might have advised a guilty plea and would, in any event, have insisted that his client not discredit himself by telling an obvious lie. The upshot, it is contended, could have been a lower sentence.

We do not say that the effect upon trial strategy and preparation is not entitled to some weight in an assessment of the prejudice resulting from a Rule 16(a)(1)(A) violation. One object of the liberalized dis-

covery provided in the amended Rule 16 is to encourage guilty pleas and save the expenses of trial. In *United States v. Lewis*, 167 U.S.App.D.C. 232, 511 F.2d 798 (1975), the court, 167 U.S.App.D.C. at 236, 511 F.2d at 802, said,

> "a principal purpose of discovery is to advise defense counsel what the defendant faces in standing trial; it permits a more accurate evaluation of the factors to be weighed in considering a disposition of the charges without trial."

Here, because of not being forewarned that it was unsafe to lie, Gladney was "hoisted on his own petard". But the question of guilt or innocence was not affected. *See Agurs v. United States*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Not only was there no prejudice to the truth-seeking process, the contrary was true. And the Government's non-compliance with Rule 16, if any, was borderline and in apparent good faith. In *Lewis, supra*, and *United States v. Padrone, supra*, two reversed cases where the prejudice was likewise to trial strategy, the Government's misconduct was far more serious. In *Lewis*, the prosecutor deliberately withheld a statement for some time after it had become known to him; and in *Padrone*, the Government, inadvertently, but with manifest incompetence, failed to disclose a statement which the court had specifically ordered it to disclose. In the circumstances, we do not find the possible impact upon defense strategy of sufficient moment to justify a reversal.

*Affirmed.*