**UNITED STATES of America**

v.

**William Vaughn WILLIAMS.**

**Crim. No. K-78-0499.**

United States District Court,
D. Maryland.

Nov. 7, 1979.

Russell T. Baker, Jr., U. S. Atty., and Stuart O. Simms, Asst. U. S. Atty., Baltimore, Md., for the United States.

Charles G. Bernstein, Federal Public Defender, and Paul W. Spence, Asst. Federal Public Defender, Baltimore, Md., for defendant.

FRANK A. KAUFMAN, District Judge:

On March 19, 1979, defendant, represented by counsel, was tried and convicted before a Magistrate of this Court for the offense of reckless driving (36 C.F.R. § 50.-32a) and the offense of following too closely (36 C.F.R. § 50.32e); on May 8, 1979, he was sentenced to seven days and $250 for reckless driving and three years' probation for following too closely. The offenses took place on September 19, 1978. On the afternoon of that day, Mrs. Carter was driving south on the Baltimore-Washington Parkway, accompanied by her 18 year old daughter and her 2½ month old baby. Both Mrs. Carter and her daughter testified that the defendant, driving "a little red car," tailgated their car for approximately 2½ miles at speeds between 50 and 55 miles per hour, came within a foot of the rear of their car, attempted to bump their car from the side, switched lanes when the Carter car switched, and in general harassed and badly scared Mrs. Carter and her daughter and endangered them and the baby. The record establishes that the incident took place on a portion of the Parkway within the jurisdiction of the federal government. Thus, this Court has jurisdiction.

Mrs. Carter and her daughter subsequently reported the incident to a policeman. The latter testified at trial that defendant approached him after defendant's initial appearance before the Magistrate on October 26, 1978 and remarked that "he [the defendant] was driving on the Parkway on that date in question and around that time in question, became . . . an altercation on the roadway at that time." Defendant testified on his own behalf after being informed of his rights and told a rather incredible story of three cars, his, Mrs. Carter's, and one other being involved in changing speeds and switching lanes but completely denied any tailgating, harass-

ment or the like on his part and blamed everything on negligent and indeed intentionally wrongful conduct by Mrs. Carter and the driver of the third car. Mrs. Carter and her 18 year old daughter both testified that the only third car which was on the scene came from behind near the latter part of the time period involved and that someone in that car called to her and advised her to leave the Parkway and call the police. The Magistrate believed the testimony of Mrs. Carter and her 18 year old daughter and found that defendant had not only followed too closely but had also intentionally or negligently tried to force Mrs. Carter's car off the road.

The principal ground[1] for this appeal[2] concerns the testimony of the policeman about the oral statement made by defendant to him on October 26, 1978. Well prior to trial, counsel for defendant and the government had entered into a discovery agreement, under which the government had agreed to give to defendant all Federal Criminal Rule 16,[3] all Brady,[4] and all Jencks[5] material prior to trial. The oral statement testified to by the police officer was not included in the pretrial discovery given to defendant. It came as a surprise at trial to defendant's counsel and was learned about by government counsel the day of trial. Defendant forthwith objected to any testimony about the statement on the grounds of nondisclosure prior to trial. The Magistrate offered defendant a continuance to enable defendant to investigate the statement and to prepare further for cross-examination of the officer, but defendant declined the offer. Thereafter, the Magistrate, after informing government

counsel that it would have been better if he had advised defendant's counsel before trial of what he had learned that day, refused to exclude the officer's testimony. Accordingly, the policeman was permitted, over defendant's objection, to testify as to defendant's October 26, 1978 statement.

■■■ The statement, as defendant concedes, does not literally come within the language of Federal Criminal Rule 16. The oral statement was not written down or recorded. Nor was it made in response to any interrogation. Rather, it was volunteered by defendant, who spoke spontaneously to the officer. Such an unsolicited remark is not within the scope of Rule 16. United States v. Martinez, 577 F.2d 960, 962 (5th Cir.), cert. denied, sub nom. Cruz-Ojeda v. United States, 439 U.S. 914, 99 S.Ct. 288, 58 L.Ed.2d 262 (1978) (per curiam by Judges Roney, Gee and Fay); United States v. Green, 548 F.2d 1261, 1267 (6th Cir. 1977). Thus, defendant was not entitled to discover the statement under Rule 16. While it is usually preferable to allow a defendant to inspect or learn about his own statements prior to trial, see United States v. Arcentales, 532 F.2d 1046, 1050 (5th Cir. 1976), J. Weinstein and M. Berger, Weinstein's Evidence, Vol. III, ¶ 612[02] at 612–24 (1978) [hereinafter cited as Weinstein's Evidence], that does not mean that when the government has accidentally failed to disclose an unrecorded and volunteered statement made by a defendant prior to trial, the admission of testimony about the statement constitutes, per se an abuse of discretion by the trial court even if the statement should have been disclosed by the government to defendant prior to trial, un-

1. During the hearing in this Court, defendant, speaking on his own behalf after his counsel had spoken, challenged on religious and perhaps on other bases the authority of the Magistrate and/or of this Court in this case.

2. This appeal is taken pursuant to Rule 8 of the Rules of Procedure for the Trial of Minor Offenses before United States Magistrates and in accordance with Rule 81 of the Local Rules of this Court.

3. That Rule provides, in relevant part:

Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: * * * the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent * * *.

4. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

5. 18 U.S.C. § 3500.

der Rule 16 or otherwise, for example pursuant to the trial court's exercise of its discretion. *See, e. g., United States v. Lewis,* 511 F.2d 798, 801–02 (D.C.Cir.1975); *United States v. Narciso,* 446 F.Supp. 252 (E.D.Mich.1977).

■ Nor did the statement constitute *Brady* material, *see United States v. Roybal,* 566 F.2d 1109, 1111 (9th Cir. 1977, as modified in 1978), since it was not exculpatory. Indeed, defendant contends that it was inculpatory as to his own involvement. *See* the discussion *supra.* Nor is the Jencks Act involved. That act provides in relevant part as follows:

(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness *(other than the defendant)* shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case. [Emphasis added.]

\* \* \* \* \* \*

(e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

In this case, the statement was made by defendant [6]; additionally, it was in any event seemingly not a "statement" within the meaning of § 3500(e).[7]

Thus, since no Rule 16, Jencks or *Brady* material was involved, the government did not violate the terms of the discovery agreement. Moreover, even if the government did violate the spirit of the agreement, such violation was not intentional. And, most important of all, the violation was not prejudicial to defendant's case.

■ The statement itself was admissible, absent any violation of the discovery agreement. Assuming, *arguendo* only, the existence of such violation, the latter in and of itself does not require reversal in the absence of prejudice. *United States v. Eddy,* 549 F.2d 108, 113 (9th Cir. 1976); *United States v. Arcentales,* 532 F.2d 1046, 1050 (5th Cir. 1976), *United States v. Johnson,* 525 F.2d 999, 1004–05 (2d Cir. 1975), *cert. denied,* 424 U.S. 920, 96 S.Ct. 1127, 47 L.Ed.2d 327 (1976).

Federal Criminal Rule 16(d)(2) provides:
(d) Regulation of Discovery.

\* \* \* \* \* \*

(2) Failure to Comply with a Request. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circum-

---

**6.** In *Goldberg v. United States,* 425 U.S. 94, 97, 96 S.Ct. 1338, 1341, 47 L.Ed.2d 603 (1976), Mr. Justice Brennan wrote:

[The Jencks Act] provides that in a federal criminal prosecution, *after a witness called by the United States* has testified on direct examination, the court, on motion of the defendant, shall order the United States to produce any "statement," as defined in the Act, in the possession of the United States that relates to the subject matter as to which the witness has testified. [Emphasis supplied.]

A defendant is hardly ever, if ever, a "witness called by the United States" and of course could not be so called without his consent. *See* 3 *Weinstein's Evidence, supra,* ¶ 612[02] at 612–20 note 8: "The Jencks Act applies only to government witnesses."

**7.** *See United States v. Roybal, supra* at 1111; 3 *Weinstein's Evidence, supra,* ¶ 612[02] at 612–24 suggests that the Jencks Act is more limited in scope than Federal Criminal Rule 16(a).

stances. The court may specify the time, place and manner of making the discovery and inspection and may prescribe such terms and conditions as are just. Thus, the trial court has available to it a number of alternative and flexible remedies when a defendant is surprised by testimony. *United States v. Gladney,* 563 F.2d 491, 494 (1st Cir. 1977) (continuance offered and refused by defendant); *United States v. Johnson,* 562 F.2d 515, 518 (8th Cir. 1977) (*per curiam*) (no continuance requested by defendant); *United States v. Fulton,* 549 F.2d 1325, 1328–29 (9th Cir. 1977) (recess granted to counteract surprise testimony sufficient); *United States v. Eddy, supra* at 113 (recesses granted and no additional time to prepare requested); *United States v. Cowles,* 503 F.2d 67, 68 (2d Cir. 1974), *cert. denied,* 419 U.S. 1113, 95 S.Ct. 790, 42 L.Ed.2d 811 (1975) (*per curiam*) (offer of continuance gave defendant "ample opportunity" to counteract surprise [8]). Thus, where the testimony is otherwise admissible (as concededly it was in the within case) one response by the trial court, and perhaps the most common, is to offer the defendant a continuance or recess to prepare for cross-examination of the witness whose testimony has come as a surprise. In this case, a continuance was offered and refused by defense counsel after a brief trial interruption in which defense counsel conferred with the defendant.

The complained of statement was testified to by the policeman on direct examination during the government's case-in-chief. Thus, Judge Gewin's comments in *United States v. Arcentales,* 532 F.2d 1046, 1050 (5th Cir. 1975), are applicable:

> We think it highly significant that the existence of the inculpatory statement became known during the government's case-in-chief. The government was not lying in wait with statements that could impeach the defendant if he decided to testify. Unlike *United States v. Lewis* [511 F.2d 798 (D.C.Cir.1975)], and *United*

*States v. Padrone,* 406 F.2d 560 (2d Cir. 1969), where the defendants were not confronted with the theretofore undisclosed inculpatory statements until they took the stand, defense counsel in the case *sub judice* became aware of the incriminating admission well before he had begun to present the defense.

Defendant stresses that the statement attributed to him by the officer was highly relevant because it constituted his admission of being on the scene—of being involved. That is true, but it is an argument which cuts both ways. It hurt the defendant and helped the government, at least to some extent, though the identification testimony by the complaining witnesses (driver and adult passenger in the molested car) was far from weak and was accepted by the Magistrate as reliable, credible and accurate. However, the statement by defendant to the officer that there had been an altercation on the road at the time of the incident is consistent with the defendant's own trial testimony. There is no suggestion that the defendant would have denied his involvement by contending he was elsewhere or would have offered any other alibi defense if his oral statement had been excluded. Even if the defendant were to claim that he would have offered an alibi, *United States v. Gladney, supra,* at 494–95 teaches that testimony such as that of the officer in this case helps the truth-seeking process: the defendant has no right to lie on the stand, and even a suppressed statement is admissible on cross-examination to test credibility. *United States v. Johnson,* 525 F.2d at 1006, citing *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Nor is the claim that the testimony of the oral statement affected the defendant's decision about whether to testify sufficient *in itself* to warrant reversal of the trial judge's refusal to exclude the statement. *United States v. Eddy, supra* at 113 (defendant decided not to testify as a result of the oral statement's admission); *United States v. Johnson,* 525 F.2d at 1005 (defend-

---

**8.** *See also United States v. Krohn,* 558 F.2d 390, 394 (8th Cir.), *cert. denied,* 434 U.S. 868, 98 S.Ct. 207, 54 L.Ed.2d 145 (1977); *but see*

*United States v. Manetta,* 551 F.2d 1352 (5th Cir. 1977).

ant claimed admission of oral statement forced him to testify; a claim not accepted, as factually indicated, by the Second Circuit).

■ Defendant argues that the admission of the testimony on a surprise basis prejudiced him in the sense that, had he known of it prior to trial, he might have sought a plea bargain. Such an argument does not in and of itself require reversal. In *United States v. Gladney, supra* at 494–95, Judge Campbell wrote for the First Circuit:

> Gladney's claim of prejudice boils down to the argument that had his counsel learned earlier of the * * * tape he might have advised a guilty plea and would, in any event, have insisted that his client not discredit himself by telling an obvious lie. The upshot, it is contended, could have been a lower sentence.

We do not say that the effect upon trial strategy and preparation is not entitled to some weight in an assessment of the prejudice resulting from a Rule 16(a)(1)(A) violation. One object of the liberalized discovery provided in the amended Rule 16 is to encourage guilty pleas and save the expenses of trial. In *United States v. Lewis,* * * * 511 F.2d 798 (1975), the court, * * * 511 F.2d at 802, said,

> "a principal purpose of discovery is to advise defense counsel what the defendant faces in standing trial; it permits a more accurate evaluation of the factors to be weighed in considering a disposition of the charges without trial."

Here, because of not being forewarned that it was unsafe to lie, *Gladney* was "hoisted on his own petard". But the question of guilt or innocence was not affected. *See Agurs v. United States,* 427 U.S. 97, [96 S.Ct. 2392, 49 L.Ed.2d 342] * * * (1976). Not only was there no prejudice to the truth-seeking process, the contrary was true. And the Government's non-compliance with Rule 16, if any, was borderline and in apparent good faith. In *Lewis, supra,* and *United States v. Padrone, supra,*[9] two reversed cases where the prejudice was likewise to

---

**9.** 406 F.2d 560 (2d Cir. 1969). In any event, *Lewis* and *Padrone* are completely distinguishable from the within case. For one thing, the oral statement here came out during the government's case-in-chief, and was not used to impeach the defendant. Thus, the defendant had time to deal with it before he took the stand, or, at any rate, was offered a continuance in which he prepared to do so. In *Lewis,* the government had stated prior to trial that defendant had made no statements at the time of his arrest which the government intended to use; on cross-examination, the prosecution asked defendant about just such a statement. Prior to trial, the government had told the defense nothing about the existence of such a statement, which might well have been discoverable prior to trial had the defense known of its existence. In reversing the conviction, Judge Lumbard, sitting by designation on the Court of Appeals for the District of Columbia Circuit, noted that the oral statement in *Lewis* impeached the defendant's credibility and undermined "a significant element in his defense." 511 F.2d at 803.

In *Padrone,* the trial judge had ordered that the prosecution turn over to defendant a written statement made by him. Through inadvertence, the statement was never given to the defendant. In *Padrone,* the court found that the nondisclosure of the statement—especially given the fact that the trial judge had seen it

and ordered the prosecution to turn over a copy to the defense—had materially affected the defense as prepared and as put forward and that defendant had had no way of knowing that his statement was going to be used to impeach him, since the statement had never been disclosed to him. Furthermore, the statement was incommensurate with the defense case. In *Padrone,* the statement itself was excluded by the trial court; however, on cross-examination the defendant was asked questions which were based upon the statement. The conviction was reversed. *See also United States v. Roybal,* 566 F.2d 1109 (9th Cir. 1977, modified in 1978), in which the Ninth Circuit reversed and remanded, because a statement of an informant concerning a drug purchase from defendant was not revealed to defendant, in violation of a discovery order. In so doing, the Court of Appeals found the admission of the evidence to be prejudicial error because the testimony came as a surprise; it was used to implicate defendant in a drug sale which was not the subject of the indictment; the defendant had been indicted solely for conspiracy; there was no other evidence in the record of any other sale by him and no drugs had been found in his possession; and he had been tried with co-conspirators against whom there was stronger evidence than there was against him.

trial strategy, the Government's misconduct was far more serious. In *Lewis*, the prosecutor deliberately withheld a statement for some time after it had become known to him; and in *Padrone*, the Government, inadvertently, but with manifest incompetence, failed to disclose a statement which the Court had specifically ordered it to disclose. In the circumstances, we do not find the possible impact upon defense strategy of sufficient moment to justify a reversal.

It is also to be noted that if this Court were to reverse and remand this case for a new trial, that would not necessarily provide a cure for the alleged lost opportunity to plea bargain. Defendant argues herein that the government would possibly not have been willing to plea bargain after virtually completing its case-in-chief. If that be so, it may well also be true that the government would not be willing to plea bargain now, if this case were reversed and remanded.

The record reveals that the defendant had a fair trial with full opportunity to present his case and unused opportunity for a recess to counter any surprise or other defense problem caused by the officer's testimony concerning defendant's October 26, 1978 statement.

The judgment herein is affirmed. While no question has been raised on appeal concerning the sentence, it was well below the statutory maximum and, in any event, in this Court's opinion most lenient under the facts found by the Magistrate.