STATE of Iowa, Appellee,

v.

Jack Edward THOMPKINS, Appellant.

No. 66236.

Supreme Court of Iowa.

April 21, 1982.

Gordon Liles, Fort Madison, for appellant.

Thomas J. Miller, Atty. Gen., Teresa Baustian, Asst. Atty. Gen., and Michael P. Short, Lee County Atty., for appellee.

Considered by LeGRAND, P. J., and HARRIS, McCORMICK, LARSON and SCHULTZ, JJ.

McCORMICK, Justice.

Defendant Jack Edward Thompkins appeals from his conviction by jury and sentence for voluntary manslaughter under section 707.4, The Code. The questions concern trial court rulings on discovery and evidence. Although defendant also challenges an instruction on proof of state of mind for first degree murder, that challenge is moot because of his acquittal of murder. We reverse and remand for new trial based on the court's failure to impose any sanction against the State for violation of a discovery order.

Michael White was fatally stabbed in or near his cell in the Fort Madison penitentiary shortly after 3:30 p. m. on July 16, 1980. Following an investigation by prison officials and department of criminal investigation (DCI) agents, defendant, a fellow inmate, was charged with the first degree murder of White.

The State's principal witnesses during its case in chief were prisoners named Worrell, Peterson and Anfinson. They testified that as they were leaving their cells after completion of a prisoner count on the occasion involved they saw defendant outside the victim's cell with a knife in his hand. They also said they observed White standing in his cell with blood on his chest. Worrell notified a guard of White's injury, and White was subsequently taken to the prison hospital where he died without identifying his assailant. None of the State witnesses mentioned Craig Suddeth, a prisoner whose cell was near White's.

Testifying in his own behalf, defendant denied stabbing White. He and inmate Terry Sallis testified they were in defendant's cell at the time the State witnesses said the assault occurred. They and other defense witnesses said defendant went to the prison library and then the yard after the count was completed. A prisoner named Madden testified he saw a man other than defendant standing alone in the corridor outside White's cell at approximately the time the evidence showed White was stabbed.

After the defense rested the State called two rebuttal witnesses who testified briefly concerning issues not germane to this appeal. Assistant Attorney General James Kivi, who prosecuted the case, notified the court he had a final rebuttal witness who would not be available until the next morning. When the trial resumed the next morning, the State called Craig Suddeth as a witness. Despite defense objections on several grounds, Suddeth was permitted to testify. He said he overheard Madden instruct defendant shortly before the prisoner count was taken "to take care of that thing right after count." As he was leaving his cell after completion of the count, he said he saw defendant in White's cell making stabbing motions with a knife. He also testified that he subsequently went to the prison library and did not see defendant there.

The case was then submitted to the jury which subsequently returned its verdict finding defendant guilty of voluntary manslaughter. Defendant filed a motion for new trial and, when it was overruled, took this appeal.

I. *The discovery issues.* Defendant contends the trial court erred in refusing to grant discovery in two respects and in refusing to impose sanctions against the State for violating a discovery order. The refusals to grant discovery related to defendant's pretrial requests for copies of any written statements or voice recordings of persons interviewed by any law enforcement agency or officer and for the names of all persons with knowledge germane to the victim's death. The alleged violation of a discovery order concerned the State's failure to disclose Suddeth's name in response to an or-

der requiring it to list all inmates "that claim or are believed to have been present in the Cellhouse # 19 complex" at the time of the assault on White.

■ We find no abuse of discretion in the two orders refusing discovery. In denying defendant's request for copies of written or recorded statements, the court ordered that at trial any such statements of State witnesses would be furnished to defendant prior to cross-examination. This procedure met the requirements of *State v. Horn,* 282 N.W.2d 717, 720–23 (Iowa 1979), *State v. Eads,* 166 N.W.2d 766, 770–71 (Iowa 1968), and Iowa R.Crim.P. 13(2)(b)(1). Moreover, under *Eads* it was not mandatory for the court to order State disclosure of the names of all persons with knowledge of the incident. *See* 166 N.W.2d at 774.

A more serious problem is presented by defendant's assertion of trial court error in refusing to impose sanctions against the State for violating the discovery order that required disclosure of names of inmates in cellhouse 19 who claimed or were believed to have been present at the time of the incident. The order was entered August 21, 1980, and the State filed its response September 21, 1980, the day before trial commenced. The response recited that the only persons that claimed or were believed to be present were those listed on the trial information. It added: "There were undoubtedly other inmates in the cellhouse at the time of the murder, but the State has no way of knowing who those inmates might be." Suddeth was not identified as a witness on the trial information, and thus his identity was not disclosed by the response.

When Suddeth was called as a State rebuttal witness, defendant made a timely objection to his testimony based in part on the alleged violation of the discovery order. The State argues the order was not violated because other discovery requests that would have required disclosure of Suddeth's name were overruled, because the prosecutor received the DCI file containing a summary of an interview with Suddeth only a day or two before trial, and because the State did not know until the night before he testified

that Suddeth would voluntarily testify. None of these arguments are tenable.

■ It is true the trial court overruled separate discovery requests that would have required disclosure of Suddeth's name. These were dragnet requests that were probably overruled for that reason. Whatever the reason for those rulings, they did not affect the State's obligation to respond to the discovery request that was granted. The State did not claim to be misled by the other rulings, nor did it claim to misunderstand the terms of the discovery order that was entered.

■ The DCI interview occurred July 17, 1980, the day after the killing. The agent's summary shows Suddeth gave a detailed account concerning his observations. The agent noted he believed Suddeth actually saw the stabbing. This information was given orally to prosecutor Kivi at least two weeks before trial. Even if Kivi had not known of Suddeth until he received the written file on approximately September 21, no explanation appears for his failure to notify defense counsel about Suddeth at any time before Suddeth was called as a witness on October 1. Furthermore, the disclosure order was not conditioned on the person's willingness to testify voluntarily.

The order imposed a continuing affirmative duty upon the State to disclose the information in its investigative files that was responsive to the inquiry. *See United States v. Jensen,* 608 F.2d 1349, 1357 (10th Cir. 1979); *United States v. James,* 495 F.2d 434, 436 (5th Cir. 1974); *United States v. Kelly,* 420 F.2d 26, 29 (2nd Cir. 1969). The record shows a deliberate and inexcusable violation of the order. Despite defendant's timely objection to Suddeth's testimony, the court refused to impose any sanction against the State for the violation. The court did order the State to furnish defense counsel with a copy of the DCI summary.

■ Authority for sanctions against a party that violates a discovery order exists in Iowa R.Crim.P. 13(6)(c):

If at any time during the course of the proceedings it is brought to the attention

of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may upon timely application order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing any evidence not disclosed, or it may enter such other order as it deems just under the circumstances.

The rule is patterned after Fed.R.Crim.P. 16(d)(2), which contains almost identical language. It gives a trial court considerable discretion in determining an appropriate sanction for violation of a discovery order. *State v. Leto*, 305 N.W.2d 482, 489 (Iowa 1981). In exercising its discretion, "the court should take into account the reasons why disclosure was not made, the extent of prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances." 1 C. Wright, *Federal Practice and Procedure* § 260 at 533 (1969). Ordinarily an abuse of discretion will not be found unless the party whose rights have been violated suffers prejudice that is not cured by a suitable sanction. *See State v. Fryer*, 226 N.W.2d 36, 39–40 (Iowa 1975); 1 C. Wright, *supra*, § 261 at 534.

■ Defendant asserted prejudice in being surprised by Suddeth's testimony. He was unable to prepare for it or to investigate to develop possible means of impeaching it. Suddeth acknowledged on cross-examination that he had falsely told defense counsel in an interview before trial that he knew nothing about the killing. The importance of Suddeth's testimony is highlighted by the fact that he was the only purported eyewitness to the actual slaying. In addition, he was the only witness who testified about hearing the instruction allegedly given by Madden to defendant and about not seeing defendant in the prison library at the time defendant claimed he was there.

The assertion of prejudice is not merely speculative. The record shows that following submission of the case to the jury two inmates read of Suddeth's testimony in a local newspaper. They contacted defense counsel and informed him that Suddeth had repeatedly denied knowing anything about the killing in conversations with them before he testified. Defendant offered their testimony in support of his new trial motion. If defense counsel had known of this evidence when Suddeth testified, he could have offered it at trial for impeachment purposes. It is likely this evidence would have been discovered earlier if defendant had been forewarned that Suddeth claimed knowledge of the killing. Because it is impossible to determine how the jury verdict might have been affected by the additional impeachment evidence, we cannot say defendant was not harmed by denial of the opportunity to prepare for Suddeth's testimony. The State obviously thought it would gain a substantial advantage through surprise. The discovery order, however, was designed to prevent such an advantage.

We need not decide whether the trial court could have obviated the prejudice by ordering a continuance as opposed to excluding Suddeth's testimony. *See* 1 C. Wright, *supra*, § 260 at 533. Defendant did not waive his right to a continuance by requesting a greater sanction. Nor did he thereby waive his right to contend on appeal that the court erred in refusing to impose any sanction against the State. He correctly invoked the court's authority under rule 13(6)(c), and alerted the court to his complaint. Thus the full range of sanctions in the rule was available.

This distinguishes the present case from the problem under Iowa R.Crim.P. 5(3) in *State v. Epps*, 313 N.W.2d 553, 557–58 (Iowa 1981). It also distinguishes the case from *United States v. Gladney*, 563 F.2d 491, 494–95 (1st Cir. 1977), where the defendant refused a continuance. The court in *Gladney* also noted that the government did not act in bad faith "as, for example, by saving the tape [of an impeaching conversation] for rebuttal, after its relevance was known, in deliberate violation of its duties under Rule 16." *Id.* at 494. We have found the violation was deliberate in the present case.

We hold that defendant's substantial rights were injuriously affected by the

State's violation of the discovery order and that the trial court abused its discretion in not imposing a suitable sanction to cure the prejudice. Support for our conclusion exists in *United States v. Roybal*, 566 F.2d 1109, 1111 (9th Cir. 1977), *United States v. Lewis*, 167 App.D.C. 232, 511 F.2d 798, 802–03 (D.C.Cir.1975), *United States v. Kelly*, 420 F.2d 26, 29 (2nd Cir. 1969), *United States v. Padrone*, 406 F.2d 560, 561 (2nd Cir. 1969), and *State v. Stapleton*, 539 S.W.2d 655, 659 (Mo.App.1976). The trial court's abuse of discretion in the present case was not necessarily in failing to exclude Suddeth's testimony. The abuse was in doing nothing to prevent defendant from being harmed by the State's breach of the discovery order.

Defendant is entitled to a new trial. On the retrial, the State is not restricted from the proper use of Suddeth's testimony, now that it has been disclosed. *See Lewis*, 511 F.2d at 803.

II. *The evidentiary issues.* Because the case is being reversed and remanded for new trial we will decide the evidentiary questions raised by defendant that may recur. They involve hearsay, relevancy and impeachment issues.

 The hearsay issue arose during Suddeth's testimony concerning Madden's alleged instruction to defendant to do the killing. Madden's statement was not hearsay because it was offered to show defendant's motive rather than to establish the truth of the assertion. *See State v. Wycoff*, 255 N.W.2d 116, 118 (Iowa 1977).

 The relevancy issue involves testimony by the State's four inmate witnesses that they were moved from the penitentiary because they were afraid for their safety there. It was made clear this fear arose from their alleged breach of the inmates' code of silence rather than from any threats for which defendant was responsible. Under these circumstances, the evidence was relevant to the witnesses' credibility, and the trial court did not abuse its discretion in overruling defendant's objections to it.

 The impeachment evidence concerned use of prior convictions. Defendant was denied the right to impeach Anfinson by introducing evidence of his 1979 conviction for lascivious acts with a child. The conviction was admissible only if the offense by its nature involved dishonesty or false statement. *State v. Martin*, 217 N.W.2d 536, 542 (Iowa 1974). The lascivious acts offense is not of the requisite character. *See Commonwealth v. Yost*, 478 Pa. 327, 386 A.2d 956 (1978). Thus the court did not err in refusing to admit evidence of Anfinson's prior conviction.

 Defendant was also precluded on the ground of remoteness from impeaching Suddeth with 1970 larceny and robbery convictions. Because of Suddeth's recidivism, the court would not have abused its discretion in admitting this evidence, but the court did not abuse its discretion in excluding it either.

 Finally, defendant objected to impeachment of his own testimony by use of a felony conviction that occurred when he was a juvenile. The fact defendant was a juvenile, though convicted as an adult, does not make the conviction inadmissible for impeachment purposes. *See State v. Black*, 116 N.H. 836, 368 A.2d 1177 (N.H. 1976), *cert. denied*, 431 U.S. 906, 97 S.Ct. 1702, 52 L.Ed.2d 391 (1977).

We find no reversible error in the court's evidentiary rulings.

REVERSED AND REMANDED.