# IN THE COURT OF APPEALS OF IOWA

No. 20-0443
Filed September 1, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ZACHARY DEAN VREELAND,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Washington County, Daniel P. Kitchen, District Associate Judge.

Zachary Vreeland appeals from his conviction for domestic-abuse assault causing bodily injury. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Josh Irwin, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**BOWER, Chief Judge.**

Zachary Vreeland appeals from his conviction for domestic-abuse assault causing bodily injury, in violation of Iowa Code section 708.2A(1) and (2)(b) (2019). He contends the trial court abused its discretion in admitting photographs that were not timely disclosed. He also raises claims of ineffective assistance of counsel.

This court does not address the ineffective-assistance-of-counsel claims on direct appeal. *See* Iowa Code § 814.7 (Supp. 2019) (providing a claim of ineffective assistance of counsel "shall not be decided on direct appeal from the criminal proceedings"); *State v. Treptow*, 960 N.W.2d 98, 107–08 (Iowa 2021) (holding the statutory provision does not violate due process or deprive a defendant of his right to effective assistance of counsel); *State v. Tucker*, 959 N.W.2d 140, 151 (Iowa 2021) (holding the provision does not violate separation-of-powers doctrine).

In the alternative, Vreeland asks that we address these claims under plain error review. Our supreme court has recently rejected a similar claim. *Treptow*, 960 N.W.2d at 109 ("We have repeatedly rejected plain error review and will not adopt it now."). This court is "not at liberty to overturn Iowa Supreme Court precedent." *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990). Consequently, we address only Vreeland's discovery-sanction issue.

Vreeland was charged with domestic abuse assault causing bodily injury after law enforcement responded to a hotel's June 30, 2019 telephone call concerning an assault. A guest called the front desk reporting a disturbance in an adjoining room and stated he could hear screaming and yelling. Hotel responders went to the room adjacent to the caller's and found S.L. crying. She reported

difficulty breathing because her boyfriend had kicked her in the chest. The responding deputy sheriff was directed to S.L.'s room. S.L. told the deputy her boyfriend—Vreeland—kicked her in the chest when she tried to wake him and then tackled her to the floor in an ensuing disagreement about money. During the altercation, S.L. called her mother. S.L. stated Vreeland broke her phone after that call. The deputy called Vreeland to return to the hotel to tell his side of the story. Vreeland refused, hung up, and would not answer additional calls.

On the morning of trial, after jury selection and opening statements, the State disclosed it had just obtained ten photographs of S.L.'s injuries taken by staff at a clinic S.L. went to the day after the assault. The prosecutor stated S.L. hand-delivered the photos that morning. The photos were not included in the State's exhibit list, but an amended exhibit list was filed about an hour later. The prosecutor argued it should be allowed to use the photos because they were disclosed "as soon as we possibly could" and "[a]s far as prejudice, the witness will be testifying to the extent and nature of her injuries, as included in the minutes [of testimony]. These simply document her injuries." The prosecutor also noted the defense had sufficient notice about the existence of the photos because the minutes of testimony stated the victim would "testify to evidence, photographs, and any depositions."

Vreeland objected to the photos based on their untimely disclosure. The district court asked defense counsel if he was "requesting additional time to respond to these photos in some way." Counsel stated that a continuance was inappropriate because a jury was already selected and Vreeland had been placed in jeopardy. The defense asked that the court "prohibit their use."

The district court declined to exclude the photos but noted it would consider other objections the defense might have when the State offered an exhibit.

Testimony was received from the hotel guest who had called the front desk. He testified he heard a woman screaming and crying. He heard the woman say, "Get off of me" and state that she could not breathe. He also testified after the disturbance had gone on for a while, he heard "what sounded like somebody maybe being thrown up against the wall, hitting a wall. It was some kind of banging or loud noises on the wall of the adjacent room."

S.L. testified she and Vreeland traveled from Lake City to the hotel at Riverside Casino on June 29 and 30 for Vreeland's brother's wedding. The morning of June 30, she and Vreeland argued. Vreeland "threw a big fit" and got back in bed. S.L. rubbed money on his face. Vreeland reacted with a "karate kick" to the center of S.L.'s chest, knocking the wind out of her. S.L. fell the floor, and Vreeland came at her again when she was going to call her mother. She reached her mother on the phone while crying hysterically and asked that her mother come get her. Vreeland took her phone and broke it. S.L. testified her glasses were broken during the altercation and she skinned her knee one of the times Vreeland tackled her to the ground.

S.L. testified Vreeland's father came to their hotel door to find out what was happening because S.L.'s mother had called him. The hotel staff arrived, Vreeland's father told them everything was fine, and then Vreeland left with his father. After the Vreelands left, S.L. called the front desk and asked for help. Hotel staff summoned emergency medical personnel and the sheriff.

S.L. testified a deputy came to speak with her and took photos of the room, her broken glasses and phone, and one of her injured knee. The emergency responders asked if S.L. wanted to go to the hospital, but she declined as she "just . . . wanted to go home." S.L.'s mother drove to pick her up and took her back to Lake City. S.L. experienced chest pain when breathing.

S.L. went to a clinic the next day. Medical staff took photos of her injuries. The prosecutor asked if those photos "fairly and accurately depict[ed] the injuries." S.L. stated, "Yeah . . . they kind of had a crappy camera, but, I mean, they did get what they could for pictures." Defense counsel objected to admission of the photos, stating, "This is not the individual who took the pictures, and I have no ability to question the person who took the pictures as to authenticity, purpose, timeliness, or anything along those lines." The district court overruled the objection because the witness had "testified as to the state of what she looked like, in her own medical condition, on that date." The defense was allowed a standing objection; the photos were admitted over the defense's objections. S.L. testified the photos showed a "cut on my lip or a scratch," and swelling of her lip, bruising to her hip, bruising on her chest and collarbone area, bruising and redness on her elbow, and redness on her left arm—all of which she testified were caused by the altercation with Vreeland.

S.L.'s mother testified when S.L. called her "in hysterics, couldn't breathe, having a panic attack." S.L.'s mother testified S.L. said Vreeland had hit her. She heard "wrestling" and the line went dead. She called Vreeland's father, who was also at the hotel, and told him Vreeland was "beating up" S.L. She drove to pick up S.L. and when she arrived at the hotel, S.L. was "still pretty upset, and she had

red marks all over her body pretty much." She testified she took S.L. to the doctor on July 1 and S.L.'s "bruises were progressing or developing."

The responding deputy testified about his involvement and stated S.L. was upset when he arrived at the hotel and he saw one abrasion on S.L.'s knee, which he photographed. He testified S.L. was applying a bag of ice to "an injury" but he did not recall where. He also stated, "Some injuries take time to develop."

The defense's motion for judgment of acquittal was denied. The jury found Vreeland guilty as charged.

On appeal, Vreeland's objection to the photos taken at the clinic is based on Iowa Rule of Criminal Procedure 2.14(2)(b)(1), which provides:

> Upon motion of the defendant, the court may . . . allow the defendant to inspect . . . photographs . . . which are within the possession, custody, or control of the state, and which are material to the preparation of the defense, or are intended for use by the state as evidence at the trial . . . .

And pursuant to rule 2.14(6)(c):

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may upon timely application order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing any evidence not disclosed, or it may enter such other order as it deems just under the circumstances.

"Discovery matters are committed to the sound discretion of the trial court and are reviewable for an abuse of discretion." *State v. Schuler*, 774 N.W.2d 294, 297 (Iowa 2009) (citation omitted). "An abuse of discretion will not be found unless the defendant demonstrates that such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.* (edited for readability).

Vreeland contends the photos were not timely provided and should have been excluded by the court as a discovery sanction. Here, the prosecutor explained he did not have the photos earlier and had "just received the pictures myself this morning when [S.L. and her mother] hand-carried them." The prosecutor was not required to turn over photos that were not in his possession. *See id.* at 300–01 (finding no discovery violation when the State did not produce all of the victim's medical records, noting while "the medical waiver may have given the State a superior ability to access the files, this fact alone does not demonstrate that the State had 'control' over the files for purposes of discovery").

In any event, the trial court has "considerable discretion in determining an appropriate sanction for violation of a discovery order." *State v. Thompkins*, 318 N.W.2d 194, 198 (Iowa 1982). "In exercising its discretion, 'the court should take into account the reasons why disclosure was not made, the extent of prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances." *Id.* (citation omitted). Here, the trial court suggested giving the defense additional time to address the photos, which the defense declined. On appeal, Vreeland asserts:

> Addressing the photographs would have required investigation into their source, requests for medical records, and potentially subpoenaing medical professionals for deposition or trial testimony. This would have forced Vreeland to choose between waiving his speedy trial right [set to expire seven days after trial began] and adequately investigating the newly-revealed photographs.

We are not persuaded by Vreeland's bald assertions the offered additional time was not a reasonable alternative. Moreover, the photos are not particularly

impactful,[1] and S.L. testified about the injuries she sustained.  The trial court did not abuse its considerable discretion in admitting the photos.  We therefore affirm.

**AFFIRMED.**

---

[1] The court agrees with S.L.'s description that the photos are of poor quality.