The STATE of Ohio, Appellee,

v.

DeLEON, Appellant.

[Cite as *State v. DeLeon* (1991), 76 Ohio App.3d 68.]

Court of Appeals of Ohio,
Montgomery County.

No. 12140.

Decided Oct. 23, 1991.

70

*Ted E. Millspaugh,* Assistant Prosecuting Attorney, for appellee.
*Paul D. Gilbert,* for appellant.

FAIN, Presiding Judge.

Antonio Michael DeLeon appeals from his conviction and sentence, following a bench trial, for unlawful possession of dangerous ordnance, possession of criminal tools, and drug abuse. DeLeon argues that the trial court erred in overruling his motion to suppress evidence, that the court's finding of guilty was against the manifest weight of the evidence, and that the court erred in admitting certain oral statements and a rental agreement into evidence.

Although we reject DeLeon's other contentions, we agree with him that the trial court erred when it held that oral statements made by DeLeon to police were not within the scope of Crim.R. 16(B)(1)(a), and admitted them in

evidence. Accordingly, the judgment is reversed, and this cause is remanded for further proceedings.

## I

The Dayton Municipal Court issued a search warrant on June 13, 1989, based on the affidavit of Dayton Police Officer David P. Putnam. The search warrant directed the search of the premises at 457 Allwen Drive, Apt. 7, Dayton, for cocaine, records showing the sale of cocaine, United States currency connected with the sale of cocaine and related narcotic paraphernalia, records or documents showing a possessory interest in the premises, and all weapons used in connection with or the protection of the sale of narcotics. The search, carried out under the direction of Officer Putnam on June 14, 1989, revealed weapons, a scale and bottles, a small quantity of cocaine residue on the scales and bottles, and $18,950 in cash. DeLeon was not present on the premises at the time the search was executed.

On August 8, 1989, DeLeon was indicted for having dangerous ordnance, an automatic firearm, in violation of R.C. 2923.17(A); possession of criminal tools, in violation of R.C. 2923.24(A); and possession of cocaine, in violation of R.C. 2925.11(A). DeLeon was tried by the court and found guilty of all counts, and sentenced accordingly. From his conviction and sentence, DeLeon appeals.

## II

DeLeon's first assignment of error is as follows:

"The trial court committed error in overruling [the] motion to suppress evidence."

DeLeon argues that the evidence of the firearms and currency should have been suppressed because the affidavit in support of the search warrant was defective in that it did not set forth sufficient facts to show probable cause for anything other than a search for cocaine, and it was in effect a general warrant since it was not sufficiently particularized to describe the property seized.

The affidavit for search warrant submitted by Officer David P. Putnam stated in pertinent part as follows:

"2. That Affiant requests the issuance of a search warrant for the following described items of property in connection with the commission of said offense(s): Cocaine a schedule II narcotic, records showing the sale of cocaine, US currency connected with the sale of cocaine and related narcotic paraphernalia. Records or documents showing possessory interest in 457 Allwen Dr

Apt #7 and all weapons used in connection and [*sic*] the protection of the sale of narcotics.

"3. That the said items of property are concealed either (a) upon the person of Antonio DeLeon, Black male, 20 years old, DOB 11–24–68, 5–6, 170lbs, AKA Tone–Tone; Black male, 18–24 years old, 5–6 to 5–9, 150 to 170lbs, or (b) are by said person at the following place(s): 457 Allwen Dr is a light tan brick multi family apartment building which is located on the north side of Allwen Dr.  * * *

"4. That the facts upon which the Affiant bases said beliefs are: (1) On or about 6–5–89, the affiant was contacted by a confidential informant and stated he/she has been inside of 457 Allwen Dr. Apt. #7 in the past week and has seen Antonio Deleon [*sic*] AKA Tone–Tone packaging cocaine and rocking up cocaine.  (2) On or about 6–7–89 the affiant met with the confidential informant.  The affiant searched the informant and found no drugs.  The affiant and the informant then drove to the area around 457 Allwen Dr. Apt. #7.  The affiant then gave the informant money for the purpose of buying drugs.  The affiant then watched as the informant walked to the front of 457 Allwen and entered the apartment building.  After approximately 2 minutes later the informant returned to the affiant and handed a quantity of suspect 'Crack' cocaine which the informant stated that he purchased from a black male, 18–24 years old, 5–6 to 5–9, 150 to 170 lbs.  (3) On or about 6–13–89 the affiant was again contacted by the confidential informant which [*sic*] he/she stated that they had just come from 457 Allwen Dr. Apt. #7 and observed a large amount of powdered cocaine.  (4) The informant listed above has provided the affiant with information which has led to the obtaining of at least 8 search warrants which has [*sic*] produced large seizures of narcotics and money which has [*sic*] resulted in people being arrested on Felony Drug Charges.  (5) The suspected crack which the informant stated he purchased from 457 Allwen Dr. Apt # 7 was field tested by the affiant which produced positive results."

DeLeon argues that the affidavit did not set forth sufficient facts to constitute probable cause under the Fourth Amendment to the United States Constitution.  He argues that the trial court erred in ruling that *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, sets the standard for issuance of a search warrant as "a fair probability" rather than the constitutionally mandated "probable cause."

As we have previously held,[1] *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, applied to Ohio the United States Supreme Court's "totality of the

---

1.  *State v. Dorsey* (July 26, 1991), Montgomery App. No. 12192, unreported, 1991 WL 227748.

circumstances" test used to determine the sufficiency of probable cause, which was enunciated in *Illinois v. Gates* (1983), 462 U.S. 213, 238–239, 103 S.Ct. 2317, 2332–2333, 76 L.Ed.2d 527; 548. Probable cause is proof less than that beyond a reasonable doubt or by a preponderance of the evidence; it is " ' "only the probability, and not a prima facie showing, of criminal activity * * * ." ' " *George, supra,* 45 Ohio St.3d at 329, 544 N.E.2d at 644–645, citing *Illinois v. Gates, supra,* 462 U.S. at 235, 103 S.Ct. at 2331, 76 L.Ed.2d at 546.

■ The review of a magistrate's determination of probable cause is not *de novo*. Reviewing courts, including a trial court conducting a suppression hearing, should give deference to the magistrate's determination of probable cause, and any marginal cases should be resolved in favor of upholding the warrant. *State v. George* (1989), 45 Ohio St.3d 325, 330, 544 N.E.2d 640, 645–646, citing *Gates, supra,* 462 U.S. at 237, 103 S.Ct. at 2331, 76 L.Ed.2d at 547, fn. 10.

■ The question is whether the affidavit provided a substantial basis for the magistrate's conclusion that there was a fair probability that drugs, paraphernalia, weapons and money would be found in the defendant's residence. We hold that there was sufficient evidence to support that conclusion. The affidavit did not rely solely on information provided by an informer; a portion of that information, regarding the sale of cocaine, was independently verified by the affiant. The informant was given money with which to buy drugs, and returned from the apartment house where DeLeon was a tenant with a quantity of a substance that a field test showed was cocaine. It is a reasonable inference that money would accompany the sale of cocaine, and that weapons might be available in order to protect the cocaine and the money obtained from its sale. Thus, while the information here is minimal, it is sufficient to uphold the warrant.

■ DeLeon further argues that the terminology in the search warrant was so general and not sufficiently specific and particularized that it became a "general warrant" in contravention of the Fourth Amendment to the United States Constitution.

The warrant authorized the search for "[c]ocaine a schedule II narcotic, records showing the sale of cocaine, US currency connected with the sale of cocaine and related narcotic paraphernalia. Records or documents showing possessory interest in 457 Allwen Dr Apt #7 and all weapons used in connection and [*sic*] the protection of the sale of narcotics." The warrant is sufficiently specific and sufficiently related to the facts as stated in the affidavit for search warrant, and the reasonable inferences from those facts, to enable the officers to search for specific types of property. Furthermore,

the trial court suppressed the evidence relating to the recovery of gold jewelry found in a shoe in the closet because that jewelry could not reasonably be inferred to be the fruits of the sale of cocaine. We do not find that the trial court erred in upholding the warrant and in refusing to suppress the balance of the evidence.

The appellant's first assignment of error is overruled.

### III

DeLeon's second assignment of error is as follows:

"The finding of guilty by the trial court was against the manifest weight of the evidence."

DeLeon was not on the premises at the time of the search of the apartment, and there was testimony relating to the presence of other people on the premises; there was no testimony that DeLeon's fingerprints were on the guns or paraphernalia except for one of his fingerprints on the top of the scale, along with several other fingerprints. Because of these facts, DeLeon argues that the state failed to prove the charges against him, especially his possession of the cocaine, guns, and paraphernalia, beyond a reasonable doubt.

An appellate court will reverse a trial court judgment as being against the weight of the evidence only when there is no competent, credible evidence going to all the essential elements of the case. A court of appeals will be guided by a presumption that the findings of the trier-of-fact were correct. The appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.

There was evidence that DeLeon was the legal tenant of the premises, that he had been seen in the apartment about a week before the search, and that one of his fingerprints was on the scale. The weapons were found on top of the TV in the living room, under the bed, and under the cushions on the couch. Officer Putnam testified that DeLeon claimed ownership of the money found in the closet. These are sufficient facts from which a trier of fact could infer enough possession or control to satisfy the requirement of possession of dangerous ordnance, criminal tools, and cocaine. Although there was testimony that other people might have been living on the premises also, there was no testimony that DeLeon had been living elsewhere for a week. Where he was in a position to know about the presence of the items but did nothing to cause

their removal from the premises, he has exerted sufficient "control" over those items to be in possession of them for purposes of the criminal law.

He also argues that because the evidence against him is circumstantial the state must meet the standard enunciated in *State v. Kulig* (1974), 37 Ohio St.2d 157, 66 O.O.2d 351, 309 N.E.2d 897, that required that circumstantial evidence relied on to prove an essential element of a crime had to be irreconcilable with any reasonable theory of innocence.

While we might have agreed with appellant had his case been decided before July 31, 1991, we are now compelled to follow the Ohio State Supreme Court decision in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, which specifically overruled *Kulig*. *Kulig* involved a two-step analysis, where first the appellate court was required to determine whether there was sufficient probative evidence to support the defendant's guilt beyond a reasonable doubt; and, second, where only circumstantial evidence was used to prove an essential element of the offense, the appellate court was required to consider whether the defendant's theory of innocence was plausible or reasonable. If the defendant's theory of innocence was reasonable, then the appellate court had to reverse the conviction, because the existence of a reasonable theory of innocence meant that the defendant's guilt had not been proven beyond reasonable doubt.

In *Jenks*, the Supreme Court held that, whether the evidence was circumstantial or direct, "the inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at 273, 574 N.E.2d at 503. "Once the jury is properly instructed as to the heavy burden the state bears under the 'guilt beyond a reasonable doubt' standard, the jury is then free to choose between competing constructions of the evidence." *Id.* Therefore, even if DeLeon has a *reasonable* and innocent explanation for the circumstances, the factfinder is still entitled to convict him "beyond a reasonable doubt" if the evidence that was presented, although circumstantial, was sufficient to meet that burden.

To appreciate fully the extent of the change in the law worked by *State v. Jenks*, it is only necessary to consider the following hypothetical example. Suppose that a murder were committed in the presence of a number of eyewitnesses, but that none of the witnesses had enough of an opportunity to observe the perpetrator to identify the culprit. Suppose further, however, that the murder were committed with a pistol, which was recovered at the scene, that had been kept in a safe to which only two persons, A and B, had the combination. Suppose it were established that the pistol had been in the safe shortly before the murder. Two reasonable inferences are immediately

suggested by these facts—one is that A got the pistol out of the safe and committed the murder; the other is that B got the pistol out of the safe and committed the murder. Under the rule of law announced in *State v. Jenks*, one jury could convict A of the murder, and another jury could convict B of the same murder, and neither conviction could be disturbed on appeal, even though it would be not only probable, but *certain*, that one of the two persons convicted of the murder was innocent. This is so because each jury is permitted to choose among any reasonable inferences that may be drawn from the established facts, even though an inference of innocence may reasonably be drawn from those same facts. Thus, each jury could choose between the two equally plausible and reasonable inferences open to it the one that would establish the guilt of the defendant on trial before that jury, even though it would be equally plausible and reasonable to suppose that the other suspect committed the murder. This may seem wholly incompatible with the notion of a reasonable doubt standard of proof, yet it is now the law in this state.[2]

Given that the law in Ohio now allows the trier of fact to find a person guilty beyond a reasonable doubt even though the evidence presents a reasonable explanation of his innocence, we must overrule DeLeon's second assignment of error.

## IV

DeLeon's third assignment of error is as follows:

"The trial court committed error in allowing into evidence the following materials: a rental application; and an oral statement made by the defendant to the police."

■ The trial court allowed a prosecution witness to refresh her recollection regarding DeLeon's prior address by looking at a rental application which had been denied admittance because the prosecution had not provided it to the defense in accordance with a motion under Crim.R. 16(B). DeLeon argues that she should not have been allowed to refresh her memory as a sanction for the prosecution's lack of compliance with Crim.R. 16(B).

In today's mobile society, most individuals have had a prior address. DeLeon has failed to show how he was or could have been prejudiced from the testimony regarding his prior address; therefore, any error the court might have committed with regard to admitting the testimony was harmless.

---

2. *State v. Jenks* (1991), 61 Ohio St.3d 259, 279, 574 N.E.2d 492, 507: "Even if we were to assume, as the appellate court did, that Jenks' and Madison's theory of innocence was reasonable, the jury was free to believe or disbelieve that theory."

We cannot say the same for the admission of an alleged oral statement by the defendant to Officer Putnam. Officer Putnam, the first witness to testify, was recalled by the prosecution as the last witness before the prosecution rested its case. The defense objected to the testimony regarding the alleged oral statement on the basis that the statement had never been disclosed pursuant to Crim.R. 16. The trial court overruled the objection on the basis that it was an oral statement that was not favorable to the defense, and, therefore, it was not discoverable under Crim.R. 16. Officer Putnam testified:

"Q. And can you tell us what did Mr. DeLeon have to say?

"A. He stated that the money which was taken from his apartment was money which he received from selling his car he had just recently sold. I asked to meet him and asked him to come to the District which he was hesitant to do for fear that he would be arrested. * * *

"Q. When he first started his conversation with you, did he start with the sale of the car?

"A. No. Just when he called, I said—I told Antonio I'd been looking for him and would like to meet up with him. I told him that we had done the search warrant at his house. I also informed him at that time—he informed me that the money which was taken from his residence was money which he had just got a receipt for the sale of his car.

"Q. One moment, Your Honor. No further questions."

After the testimony, the defense moved again to strike the testimony; the court responded: "Overruled. The witness was significant."

The prosecutor's failure to disclose the statement was apparently deliberate. In arguing the admissibility of the statement, he argued that the statement was admissible for two reasons: first, because the statement was made before the defendant was arrested; and, second, because the statement was never recorded or summarized in any police report.

The oral statement should have been disclosed to the defendant. Crim.R. 16 provides that the prosecuting attorney shall provide to the defense statements made by the defendant, including "written summaries of oral statements" made to any law enforcement officer. The police and prosecutor cannot subvert this requirement by the expedient of not making a note, record, or summary of the statement. The oral statement made by the defendant to the police officer was a discoverable statement that should have been disclosed pursuant to Crim.R. 16, even though no written summaries had been made at the time of the discovery request. *State v. Parson* (1983), 6 Ohio St.3d 442, 445, 6 OBR 485, 487–488, 453 N.E.2d 689, 691–692.

■ An appellate court's general inquiry when a trial court permits testimony in violation of a discovery rule is whether it was an abuse of the court's discretion to admit the undisclosed testimony. In determining whether the trial court's decision allowing the testimony was an abuse of discretion, we must consider whether the record demonstrates (1) that the prosecution's failure to disclose was a willful violation of Crim.R. 16, (2) that foreknowledge of the statement would have benefitted the accused in the preparation of his defense, or (3) that the accused was prejudiced by admission of the statement. *State v. Parson* (1983), 6 Ohio St.3d 442, 6 OBR 485, 453 N.E.2d 689. In the present case the failure to provide discovery was apparently deliberate,[3] the testimony was "significant" to the trier of fact and prejudicial to the defendant, and the defendant was surprised by the testimony. The defendant's strategy was not to testify in his own defense. Prejudice can be inferred from the fact that the last two witnesses were surprise witnesses with information that could not be refuted unless the defendant were to change his strategy at the last minute and testify.

■ The trial court erred as a matter of law in holding that oral statements of the defendant to police enforcement officers were not discoverable. When the record affirmatively shows that the trial court has made an error of fact or law upon which it has evidently relied in exercising its discretion, the trial court's decision is reversible error, even if it might have reached the same result in exercising its discretion without the error. The presumption of regularity is overcome if the record affirmatively shows that the trial court relied upon a mistake of law or fact in exercising its discretion. *Spencer v. Spencer* (Apr. 29, 1991), Clark App. No. 2724, unreported, 1991 WL 70726.

■ Crim.R. 16(E)(3) provides that for failure to comply with that rule the court may order the party to permit the discovery, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or make any other order it deems just in the circumstances. We cannot tell from the record whether the trial court would have admitted the oral statement had it concluded, as it should have, that a discovery violation had occurred. Therefore, the third assignment of error is sustained.

---

3. We also note that the prosecution intended to call as its last witness another witness who would have testified to oral statements made by the defendant to him. The defense objected, and the prosecution rested without the testimony. But the fact that the last two witnesses called by the prosecution were witnesses who testified or would have testified to oral statements allegedly made by the defendant and not disclosed by the prosecution underscores the willful nature of these violations of Crim.R. 16.

## V

The appellant's third assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

WILSON, J., concurs.

GRADY, J., dissents.

GRADY, Judge, dissenting.

I respectfully dissent from the decision of the majority concerning the third assignment of error.

The appellant requested discovery of all materials discoverable under Crim.R. 16, including "any statements or summaries thereof attributed to the Defendant." Arguably, oral statements not reduced to writing were within the scope of the request. The state provided copies of *written* statements or summaries pursuant to the Montgomery County Common Pleas Court Management Plan. The oral statement to which Officer Putnam later testified was not produced or discovered.

Crim.R. 16(B)(1)(a) applies to written or recorded statements of the defendant and written summaries of any oral statement, or copies thereof, made by the defendant to a prosecuting attorney or law enforcement officer. The statements of appellant to which Officer Putnam testified were neither written, recorded, nor reduced to written summary. They were not discoverable under the express requirements of Crim.R. 16.

The majority relies on *State v. Parsons* (1983), 6 Ohio St.3d 442, 6 OBR 485, 453 N.E.2d 689, for its holding that an oral statement is subject to discovery under Crim.R. 16. *Parsons* involved an oral statement not discovered, and in the syllabus the Supreme Court appears to extend discovery to oral statements. However, the decision turns on other issues.

In *Parsons,* a request was made by the defendant for discovery of both oral and written statements. In response, the prosecution stated that neither the defendant nor his codefendant had made any statements. The state later introduced an oral statement of the codefendant, over objection. The Supreme Court observed that the statement should have been produced in discovery, but found no abuse of discretion in permitting its introduction. The court did not say how or why the oral statement was discoverable.

*Parsons* cites with approval *United States v. Lewis* (C.A.D.C.1975), 511 F.2d 798. In that case, the prosecution affirmatively represented, in response to a motion to suppress, that "[t]he defendant did not make any statements at the time of his arrest which the government intends to use against him." *Id.* at 799. The prosecution later attempted to introduce an oral statement of the accused. It was permitted by the trial court. The Court of Appeals for the District of Columbia found that the trial court abused its discretion in failing to exclude the evidence, or grant other relief, because of the misrepresentation. There was no finding that the oral statement was *per se* discoverable under Fed.R.Crim.P. 16, which is also limited to written materials.

In both *Parsons* and *Lewis,* therefore, affirmative representations were made either that no statement was made or that if a statement was made it would not be used. Any consideration given to excluding the evidence was based on the fact of the misrepresentation, not on a conclusion that the oral statement was discoverable.

I believe that the rule of the *Parsons* syllabus extending Crim.R. 16 to oral statements repeats dicta in the opinion and is not consistent with the rule of the case. At most, *Parsons* permits the trial court to exclude evidence of an oral statement when the state has affirmatively misrepresented the existence of the statement or its intention to use it.

There is no indication in the record before us, and appellant does not argue, that the appellee affirmatively misrepresented the existence of the evidence offered by Officer Putnam or the state's intention to use it. Absent that showing, I could not find that the trial court abused its discretion in permitting introduction of that evidence.

While I believe that the trial court did not commit reversible error, I am, nevertheless, sympathetic to the concerns expressed by the majority that the police and prosecutor should not subvert the purposes of discovery by the expedient of not making a record of crucial evidence. There may be a practice of withholding such evidence for rebuttal in order to impeach a defendant who has testified to the contrary in his own defense. If so, the practice effectively denies an accused facts or information which he reasonably requires to prepare his defense and plan his defense strategy. See *State v. Moore* (1988), 40 Ohio St.3d 63, 531 N.E.2d 691. It should be avoided, or even prohibited. However, any requirement that oral statements not reduced to written record must be produced upon a discovery request for them should be made through modification of Crim.R. 16, not by decisional rule.

I would overrule the assignment of error.