[Cite as *State v. Smedley*, 2018-Ohio-4629.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27889 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-4069 |
| | : | |
| MIKEIAL SMEDLEY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 16th day of November, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

ADAM J. ARNOLD, Atty. Reg. No. 0088791, 120 W. Second Street, Suite 1717, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Mikeial Smedley appeals from his convictions for trafficking and possessing cocaine and heroin and other related offenses. He contends that the search warrant that led to these charges was not supported by probable cause. He also contends that his trial counsel was ineffective for not challenging the search warrant under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), based on false and misleading information in the supporting affidavit. We conclude that the search warrant demonstrates probable cause and that the record reveals no basis for a *Franks* hearing. We affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶ 2} On June 2, 2017, Smedley was indicted on two counts of trafficking in cocaine (less than five grams), in violation of R.C. 2925.03(A)(1) and (C)(4)(a); three counts of aggravated trafficking in drugs (Schedule I or II), in violation of R.C. 2925.03(A)(1) and (C)(1)(a); one count of trafficking in heroin, in violation of R.C. 2925.03(A)(1) and (C)(6)(a); one count of possession of heroin (100 unit doses but less than 500 unit doses), in violation of R.C. 2925.11(A) and (C)(6)(d); one count of aggravated possession of drugs (Schedule I or II), in violation of R.C. 2925.11(A) and (C)(1)(a); one count of possession of cocaine (less than five grams), in violation of R.C. 2925.11(A) and (C)(4)(a); one count of tampering with evidence (alter/destroy), in violation of R.C. 2921.12(A)(1); and one count of possession of criminal tools, in violation of R.C. 2923.24(A) and (C).

{¶ 3} Smedley filed a motion to suppress the contraband found in his apartment, which police searched under a warrant. At a suppression hearing, the only evidence

presented was the search warrant and the supporting affidavit. The parties agreed that a "four-corners" analysis of the warrant by the trial court would be sufficient to decide the motion to suppress. The affidavit was prepared and submitted by Detective Brad Campbell of the Clayton Police Department. Det. Campbell recounted the following facts that led to Smedley's indictment.

{¶ 4} On March 25, 2017, the Clayton Police Department received a complaint about drug activity occurring at an apartment building in the City of Clayton. The complainant said that a black male was selling drugs out of a particular apartment, and that a large amount of traffic would come and go from the apartment throughout the day. Det. Campbell, who was assigned to the Regional Agencies Narcotics and Gun Enforcement (RANGE) Task Force and had extensive experience with drug investigations, called the complainant for more information. The complainant told him that the black male resident of the apartment would regularly walk down from his apartment to the parking lot of the building and engage in hand-to-hand drug transactions at all hours of the day and night.

{¶ 5} Det. Campbell checked dispatch records and talked to the apartment manager and discovered that Smedley was the current lessee of the apartment. Campbell ran Smedley's name through the Ohio Bureau of Motor Vehicles database and confirmed that the apartment address was listed as his home address on his driver's license.

{¶ 6} On March 28, Det. Campbell conducted surveillance on the apartment for several hours. Multiple times, he saw a vehicle drive into the parking lot and park in a spot that Campbell could not see. A young black male would soon exit the apartment and walk to the vehicle's location. A short time later, the man would walk back to the apartment,

and the vehicle would drive away. Det. Campbell knew, based on his training and experience, that this behavior was consistent with drug trafficking.

{¶ 7} On May 11, Det. Campbell, along with Det. McCoy, also on the RANGE Task Force, met with a confidential informant, or CI, who agreed to provide information in exchange for case consideration. The CI told the detectives that he regularly purchased cocaine and heroin at the apartment. The CI said that he bought the drugs from a black male whom he knew only as "Ox," and he positively identified "Ox" as Smedley, based on a photograph of Smedley. Det. Campbell had never before used the informant as a source, but he "was able to corroborate information that the CI provided utilizing independent investigative techniques." (Affidavit, ¶ G).

{¶ 8} Detectives from the RANGE Task Force organized a series of three controlled buys from the apartment using the confidential informant. The first occurred on May 16:

I. * * * Detective A.D. McCoy met with the CI M in regards to conducting a controlled purchase of cocaine and heroin from Mikeial Smedley at 7837 North Main Street Apartment #11 in the City of Clayton. The CI was searched for contraband and none was found. The CI was then outfitted with a wireless transmitter for security purposes and provided with serialized RANGE buy funds to conduct the controlled purchase. While Detective McCoy was meeting with the CI, RANGE Task Force Detective Josh Samples established surveillance of 7837 North Main Street, Apartment #11.

J. At the direction of Detective McCoy, the CI placed a controlled

phone call to phone number * * * to order the narcotics. Detective McCoy monitored this phone call. The CI spoke to a male subject on the phone and the male subject agreed to the sale. At the same time that the CI was speaking to the male subject on the phone, Detective Samples observed a black male wearing a red Ohio State jersey standing at the front screen door of 7837 North Main Street, Apartment #11. Detective Samples was able to positively identify this subject as Mikeial Smedley. When the CI placed the controlled phone call to [the phone number], Detective Samples observed Smedley appear to answer his phone and begin speaking to someone. When the CI ended the controlled phone call, Detective Samples observed Smedley appear to hang up his phone.

K. Detective McCoy then transported the CI to the area of 7837 North Main Street and dropped him/her off. The CI was kept under constant surveillance by Detective Samples. As the CI was walking towards the door of apartment #11, Smedley exited the front door of the apartment and met with the CI on the outdoor walkway. Smedley and the CI then exchanged something hand-to-hand and the CI walked away from the apartment, while Smedley re-entered the apartment through the front door. The CI returned to Detective McCoy's vehicle and immediately turned over four (4) gel capsules of suspected narcotics; two (2) capsules of suspected cocaine and two (2) capsules of suspected fentanyl. Detective McCoy and the CI then departed the area.

L. Once at a secure location, Detective McCoy searched the CI again

and no contraband was found on his/her person. Detective McCoy later conducted a field test of the suspected cocaine that the CI had purchased from Smedley and the substance tested positive for the presence of cocaine. The suspected fentanyl that the CI had purchased was not field tested. The gel capsules were photographed, packaged, and submitted to the MVRCL for analysis. The results from the MVRCL are pending.

{¶ 9} The second controlled buy occurred two days later, on May 16. The affidavit describes the buy as occurring almost exactly like the first controlled buy. The confidential informant was searched, outfitted with a wireless transmitter, and given money. While one detective got the informant ready, another detective watched the apartment. Det. McCoy dropped off the CI, and then he and another detective watched the buy unfold. The CI entered the apartment and exited a short time later, returning directly to McCoy. This time, the CI turned over four gel capsules of suspected narcotics—two capsules of suspected cocaine, one capsule of suspected fentanyl, and one capsule of suspected heroin. The CI told McCoy that Smedley let him into the apartment and sold him the drugs. McCoy field tested the suspected heroin, and it tested positive. The suspected cocaine and fentanyl were sent to the lab for analysis.

{¶ 10} The third controlled buy occurred a week later, on May 23. Det. Campbell participated in this one. The affidavit describes the buy as occurring almost exactly like the two earlier controlled buys. The CI was searched, outfitted with a wireless transmitter, and given money. While one detective got the informant ready, another detective watched the apartment. Det. McCoy dropped off the CI, and then he, the other detective, and Det. Campbell watched. The CI walked up to the front door of the apartment, and a short time

later, Smedley came up the stairs from the parking lot and met the CI on the front walkway. Smedley opened the door to the apartment, and he and the CI went inside. The CI exited a short time later and returned directly to McCoy. Again, the confidential informant turned over four gel capsules of suspected narcotics—this time, two capsules of suspected cocaine and two capsules of suspected heroin. The CI said that it was Smedley who let him into the apartment and sold him the drugs. Det. Campbell field tested the suspected heroin, and it tested positive. The suspected cocaine and fentanyl were sent to the lab for analysis.

{¶ 11} The day after the third controlled buy, on May 24, Det. Campbell presented a request for a search warrant and a supporting affidavit to a judge in the Montgomery County Court of Common Pleas. The warrant sought to search Smedley's person and apartment for, among other things, heroin, cocaine, any other controlled substance, and property associated with drug trafficking. The judge signed the warrant, and it was executed the following day.

{¶ 12} The trial court overruled Smedley's motion to suppress. The court concluded that the affidavit submitted in support of the search warrant provided a substantial basis for the issuing judge to find a fair probability that drugs would be found in the apartment.

{¶ 13} Smedley pleaded no contest to three counts of aggravated trafficking, one count of possession of heroin, one count of tampering with evidence, and one count of possession of criminal tools. The remaining counts were dismissed. Smedley was found guilty and sentenced to a total of three years in prison.

{¶ 14} Smedley appeals.

## II. Law and Analysis

{¶ 15} Smedley presents two assignments of error for our review. The first challenges the trial court's decision to overrule his motion to suppress. And the second asserts a claim of ineffective assistance of counsel.

## A. Motion to suppress

{¶ 16} Smedley alleges in the first assignment of error that the trial court erred by overruling his motion to suppress. He contends that the affidavit supporting the search warrant was insufficient to establish probable cause.

{¶ 17} "The review of a motion to suppress is a mixed question of law and fact." *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 32, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71. "[A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citation omitted.) *Id.*

{¶ 18} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide that search warrants may be issued only upon probable cause. *See also* Crim.R. 41(C); R.C. 2933.23. In deciding whether an affidavit submitted in support of a search warrant gives probable cause to issue the warrant, the issuing judge must make " 'a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Illinois*

*v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "[I]n determining whether a search warrant was issued upon a proper showing of probable cause, reviewing courts must examine the totality of the circumstances." *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 13, citing *Gates* at 238. "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * conclud[ing]' that probable cause existed." *Gates* at 238-239, quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), *overruled on other grounds*, *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).

**{¶ 19}** In sum, "[f]or a search warrant to issue, the evidence must be sufficient for the magistrate to conclude that there is a fair probability that evidence of a crime will be found in a particular place. The reviewing court then must ensure that the magistrate had a substantial basis for concluding that probable cause existed." (Citations omitted.) *Castagnola* at ¶ 35.

**{¶ 20}** Smedley first argues that Det. Campbell's affidavit was insufficient to establish probable cause because it failed to establish that the confidential informant was credible or that the informant's information was reliable. Smedley points out that Campbell stated that he had never used, or even had any contact with, the CI. However, the affidavit does not rely solely on the CI's information about the drug sales. That information was independently verified by Det. Campbell. The affidavit described how Campbell conducted surveillance on the apartment and saw activity that, based on his training and experience, he recognized as consistent with drug trafficking. The affidavit also described how law enforcement officers conducted three controlled buys of illegal drugs from Smedley.

{¶ 21} The descriptions of the controlled buys here were sufficient by themselves to issue the search warrant. We held in *State v. DeLeon*, 76 Ohio App.3d 68, 600 N.E.2d 1137 (2d Dist.1991), that an affidavit similar to the one here provided a substantial basis for a magistrate to conclude that there was a fair probability that drugs, paraphernalia, weapons, and money would be found in a residence. In that case, the affidavit stated that a confidential informant had been inside the defendant's apartment and seen cocaine, and that a controlled buy was arranged in which the informant bought cocaine from the defendant. In upholding the search warrant, we pointed out that "[t]he affidavit did not rely solely on information provided by an informer; a portion of that information, regarding the sale of cocaine, was independently verified by the affiant." *Id.* at 73. Other Ohio courts have also upheld search warrants based on affidavits that described controlled buys. *See, e.g., State v. Tutt*, 2015-Ohio-5145, 54 N.E.3d 619 (8th Dist.) (substantial basis for finding probable cause to issue warrant to search residence based on affidavit stating that confidential informant approached the affiant-detective with information that defendant was selling drugs, describing two controlled buys, and stating that the affiant's training and experience led him to believe that drugs were being sold at the residence); *State v. Turner*, 8th Dist. Cuyahoga No. 92966, 2010-Ohio-1205, ¶ 19 (finding that where police successfully conducted a controlled buy at defendant's residence three days before obtaining search warrant, probable cause existed for warrant to search residence, noting that "[s]uch facts have been routinely recognized to be enough to establish probable cause regarding the existence of the same contraband in the location"); *State v. Raines*, 4th Dist. Ross No. 03CA2739, 2004-Ohio-1915, ¶ 14 (detailed account in affidavit of controlled buys from defendant's house provided sufficient facts, based upon the totality

of the circumstances, to support issuing judge's finding of probable cause); *State v. Freeman*, 32 Ohio App.3d 42, 44, 513 N.E.2d 1354 (1st Dist.1986) (upholding search warrant based on affidavit describing controlled buy by an informant).

{¶ 22} The supporting affidavit here provided a substantial basis for the issuing judge's conclusion that drugs, and the other items specified in the search warrant, would be found in Smedley's residence. The trial court did not err by overruling the motion to suppress.

{¶ 23} The first assignment of error is overruled.

### B. Ineffective assistance of counsel

{¶ 24} In his second assignment of error, Smedley presents a claim for ineffective assistance of counsel based on trial counsel's alleged failure to challenge the search warrant under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), based on false and misleading information in the supporting affidavit.

{¶ 25} "Reversal of a conviction for ineffective assistance of counsel requires the defendant to show first that counsel's performance was deficient and second that the deficient performance prejudiced the defense, depriving the defendant of a fair trial." *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 41, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus.

{¶ 26} Under *Franks*, "[t]o successfully attack the veracity of a facially sufficient search warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either 'intentionally, or with reckless disregard for the truth.' " *State v. Waddy*, 63 Ohio St.3d 424, 441, 588 N.E.2d 819 (1992), quoting *Franks*

at 155-156. "[W]hen a defendant challenges the sufficiency of a search warrant on the basis that the affidavit contains a false statement affecting the magistrate's probable-cause determination, a reviewing court must consider whether those statements were made intentionally or with reckless disregard for the truth." (Citation omitted.) *Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, at ¶ 42.

{¶ 27} Smedley argues that the affidavit contains a "potentially false" statement in paragraph G, where Det. Campbell averred that he "was able to corroborate information that the CI provided utilizing independent investigative techniques." Smedley says that there was no evidence that the CI was reliable and no evidence that Campbell actually used any "independent investigative techniques" to determine if the information provided by the CI was truthful.

{¶ 28} In our view, the challenged statement is supported by the record and there is no indication that it was intentionally or recklessly false. Det. Campbell clearly used "independent investigative techniques" to corroborate the informant's information. Campbell first conducted surveillance on Smedley's apartment and saw activity consistent with drug trafficking. Then three controlled buys were conducted, and each time an officer verified that illegal drugs were purchased. There was no basis for the court to have ordered a *Franks* hearing, and such a request, if made, would properly have been denied. Counsel was not required to raise an issue that had no reasonable likelihood of success. Consequently, we cannot conclude that trial counsel was ineffective for not asserting a *Franks* challenge.

{¶ 29} The second assignment of error is overruled.

### III. Conclusion

{¶ 30} We have overruled both assignments of error presented. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.

Copies sent to:

Mathias H. Heck
Michael J. Scarpelli
Adam J. Arnold
Hon. Dennis J. Langer