15 F.3d 1090
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
German Juventino ALTAMIRANO-RAMIREZ, Defendant-Appellant.
 No. 92-50743.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 3, 1993.
Decided Nov. 24, 1993.
 
 Before: TANG, CANBY, and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 German Altamirano-Ramirez appeals his conviction of possession of heroin with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1). He maintains that he is entitled to a new trial on the grounds that (1) his conviction was based on evidence that was discovered pursuant to an illegal search, and (2) the government, in violation of Fed.R.Crim.Proc. 16(a)(1), failed to disclose the written record of a statement made by Altamirano-Ramirez. We affirm the conviction, concluding that the evidence was discovered during the course of a valid search incident to arrest, and that the district court adequately cured the Rule 16(a)(1) violation.
 
 
 3
 * Appellant Altamirano-Ramirez and two companions were arrested by border patrol agent Chris Bippley for entering the United States illegally. Following the arrest, Bippley patted down all three suspects to search for weapons, contraband, and evidence. During the search of Altamirano-Ramirez, Bippley felt and heard what seemed to be plastic bags in the lining of Altamirano-Ramirez's jacket.
 
 
 4
 Bippley testified that he thought it would be safer to have the jacket taken off before he continued examining it, so he ordered Altamirano-Ramirez to remove it, and then placed all three arrestees inside his truck. After further examination, Bippley cut a small hole in the lining to gain access to what he felt inside. When he removed his knife from the hole, it was covered with a white powder that Bippley took to be narcotics. Upon analysis, the jacket proved to contain approximately 250 grams of heroin.
 
 
 5
 Altamirano-Ramirez contends that the district court erred in refusing to suppress this evidence. He agrees that the pat down search of the jacket was a valid search incident to arrest, but argues that once the jacket had been removed and was in Bippley's exclusive control, further searching was impermissible. We find no merit in this contention.
 
 
 6
 "When making a lawful arrest, police may conduct a warrantless search of the area within the arrestee's immediate control...." United States v. Turner, 926 F.2d 883, 887 (9th Cir.) (citing Chimel v. California, 395 U.S. 752, 763 (1969)), cert. denied, 112 S.Ct. 103 (1991). "Such a search ... must be conducted at about the same time as the arrest." Id. (quotation omitted). To determine the legality of such a search, we apply a two part inquiry. See id. at 887-88. First, we ask whether the item or area searched was "within the arrestee's immediate control when he was arrested." Id. Second, we ask whether events occurring after the arrest but before the search made the search unreasonable. Id.
 
 
 7
 The facts of this case satisfy both parts of this inquiry. Altamirano-Ramirez was wearing the jacket when arrested; it plainly was within his control.[1] Bippley removed the jacket from Altamirano-Ramirez and secured him in the truck before completing the search out of concern for his (Bippley's) safety. This delay did not render the subsequent search unreasonable. See id. at 888 (delay in searching room until suspect was handcuffed reasonable to protect safety of arresting officers). Nor did the fact that the jacket had been reduced to Bippley's exclusive control make its subsequent search invalid; what matters is that the jacket was within Altamirano-Ramirez's control at the time of arrest. Id.; see also New York v. Belton, 453 U.S. 454, 462-63 (1981) (search incident to arrest of suspect's jacket, which was inaccessible to suspect at time of search, did not violate Fourth Amendment).[2]
 
 
 8
 Altamirano-Ramirez also objects that even if the search otherwise was legal, the manner in which it was carried out was "intolerably intensive," because Bippley "slashed open the lining and destroyed the jacket in order to search the inaccessible interior." Bippley, in fact, cut a one quarter inch slit in the lining. This hardly amounts to destroying the jacket and was not unreasonable under the circumstances.[3]
 
 
 9
 The Supreme Court's recent decision in Minnesota v. Dickerson, 113 S.Ct. 2130 (1993), does not alter our conclusion. There the Court held that an officer who feels a suspicious object, not a weapon, on the person of a suspect during a Terry search may not lawfully continue the search to determine whether the felt object is contraband; the search is unlawful unless the incriminating character of the object was immediately apparent when felt. Id. at 2139. The crux of the Dickerson ruling, however, was the limited nature of a Terry search; it is designed " 'to determine whether the person is in fact carrying a weapon.' " Id. at 2136 (quoting Terry v. Ohio, 392 U.S. 1, 24 (1968)). In our case, however, Altamirano-Ramirez had been arrested. A search incident to arrest is not confined to weapons, but may include a search for evidence that might be destroyed or hidden by the arrestee. Chimel v. California, 395 U.S. 752, 762-63 (1969) (distinguishing between permissible scope of Terry search and permissible scope of search incident to arrest); see also Dickerson, 113 S.Ct. at 2140 (Scalia, J., concurring) (common law permitted full evidentiary search incident to arrest). Dickerson accordingly does not bar the search of Altamirano-Ramirez's jacket.[4]
 
 II
 
 10
 When agent Bippley first patted down Altamirano-Ramirez and felt something inside his jacket's lining, he asked Altamirano-Ramirez what was there. Altamirano-Ramirez replied, but Bippley did not hear the answer, nor did he ask Altamirano-Ramirez to repeat it. However, one week before trial, when the government interviewed the two men who were arrested with Altamirano-Ramirez, one of them, Ignacio Altamirano, stated that he had heard Altamirano-Ramirez's response to the question, and that Altamirano-Ramirez had replied "dope." Ignacio then signed an affidavit containing this information. The government did not turn over the affidavit to the defense prior to trial, nor did it notify the defense of Ignacio's statement.
 
 
 11
 At trial, the defense called Ignacio as a witness, and during cross-examination the government questioned him regarding Altamirano-Ramirez's admission in the following exchange:
 
 
 12
 Q. And when he was feeling the jacket that your cousin German was wearing, he asked your cousin German what was in the jacket, didn't he?
 
 
 13
 A. Yes.
 
 
 14
 Q. And what did your cousin German say?
 
 
 15
 A. When he was searching him, he grabbed him here, and when he started to search him, he was talking to German, and he wanted to argue with him--
 
 
 16
 COUNSEL FOR DEFENSE: Your Honor, this was not provided in discovery.
 
 
 17
 THE COURT: Overruled.
 
 
 18
 Q. Isn't it true that when the border patrolman asked him what was in the jacket, German replied "dope?"
 
 
 19
 COUNSEL FOR DEFENSE: Objection; move for a mistrial, your Honor. This was a discovery violation that the government--
 
 
 20
 THE COURT: The motion is denied.
 
 
 21
 COUNSEL FOR DEFENSE: Motion to strike then, your honor.
 
 
 22
 THE COURT: That motion is granted.
 
 
 23
 Altamirano-Ramirez contends that the government's failure to turn over Ignacio's affidavit to the defense prior to trial violated Fed.R.Crim.Proc. 16(a)(1)(A), and thus the district court erred in not granting the motion for a mistrial. While we agree that the government's failure to produce the affidavit prior to trial violated Rule 16(a)(1)(A), we find that district court did not err in refusing to grant a mistrial.
 
 
 24
 * Fed.R.Crim.Proc. 16(a)(1)(A) provides:
 
 
 25
 Upon request of a defendant the government shall disclose to the defendant and make available for inspection, copying, or photographing: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody, or control of the government, the existence of which is known ... to the attorney for the government; that portion of any written record containing the substance of any relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent.
 
 
 26
 The plain language of Rule 16(a)(1)(A) contemplates that any record in the government's control that contains a statement made by a defendant in response to interrogation by a government official be produced upon request. Despite this language, the government argues that we should interpret the rule as applying only to statements heard and recorded by government agents but not to statements heard and recorded by third parties, such as Ignacio. The government contends that this interpretation is consistent with what it takes to be the purpose of the rule: to ensure that a defendant can acquire interrogation information that otherwise would remain in the exclusive control of the prosecution. Because statements heard by third parties are not exclusively controlled by the prosecution, their disclosure would not further this purpose, and therefore, the government argues, their disclosure is not required by the rule.
 
 
 27
 Not only does the interpretation urged by the government fly in the face of the plain meaning of the rule, it is based on an erroneously narrow view of the rule's purpose. Far from having the limited purpose claimed by the government, the disclosure provisions of Rule 16 were adopted:
 
 
 28
 in the view that broad discovery contributes to the fair and efficient administration of criminal justice by providing the defendant with enough information to make an informed decision as to plea; by minimizing the undesirable effect of surprise at the trial; and by otherwise contributing to an accurate determination of the issue of guilt or innocence.
 
 
 29
 * * *
 
 
 30
 The requirement that the statement be disclosed prior to trial, rather than waiting until the trial, also contributes to efficiency of administration. It is during the pretrial stage that the defendant usually decides whether to plead guilty. The pretrial stage is also the time during which many objections to the admissibility of types of evidence ought to be made.
 
 
 31
 Fed.R.Crim.Proc. 16 advisory committee's note to 1974 Amendment (citation omitted).
 
 
 32
 With respect to these goals, no sufficient distinction can be drawn between statements made by a defendant that were heard and reported by the agent and those that may have been heard and reported by a third party. In either case, a defendant might want to challenge on Miranda or other evidentiary grounds the admissibility of the statements contained in such documents. In either case, knowledge of statements that he made in response to interrogation is likely to affect a defendant's decision regarding his plea. And in either case, permitting a defendant to discover such statements reduces the possibility of surprise at trial.
 
 
 33
 We conclude that Ignacio's affidavit falls within the ambit of Rule 16(a)(1)(A), and the government's failure to produce it violated that rule.
 
 B
 
 34
 "The sanctions to be imposed for failure to comply with discovery rest in the sound discretion of the trial court." United States v. Burgess, 791 F.2d 676, 681 (9th Cir.1986) (citations omitted). On realizing that the government had violated Rule 16(a)(1)(A) by failing to disclose Ignacio's affidavit, the district court ordered the prosecutor's reference to Altamirano-Ramirez's statement stricken from the record. In Altamirano-Ramirez's view, the district court should have done more, and abused its discretion in refusing to grant his motion for a mistrial. We find that the steps taken by the district court were adequate to cure the Rule 16 violation, and it did not abuse its discretion in refusing to grant Altamirano-Ramirez's motion for a mistrial.
 
 
 35
 The district court granted the defense's motion to strike immediately after the government alluded to Altamirano-Ramirez's admission. The witness never answered the question, and the government made no further reference to the matter. Furthermore, the court instructed the jury, without referring directly to the improper question, that questions by attorneys are not evidence and that the jury should not speculate as to answers that might have been given to questions that had been stricken from the record. These measures adequately prevented the Rule 16 violation from affecting the jury's decision. Greer v. Miller, 483 U.S. 756, 766 n. 8 (1987) ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions." (citation omitted)).
 
 
 36
 Similarly, we find no evidence that the Rule 16 violation detrimentally affected Altamirano-Ramirez's defense strategy to the extent that a new trial was warranted. In this regard, Altamirano-Ramirez asserts only that had the defense known of the statement contained in Ignacio's affidavit, the defense's "decision to call [Ignacio as a witness] would have taken on a different light." However, because the government could have called Ignacio as a witness if the defense declined to do so, Fed.R.Evid. 801(d)(2), it is clear that the defense's awareness of the statement would have had little, if any, impact on the evidence that was offered at trial.[5]
 
 
 37
 Given that adequate curative jury instructions were given, and that the Rule 16(a)(1)(A) violation evidently caused little, if any, prejudice to Altamirano-Ramirez's defense, the district court did not abuse its discretion in refusing to declare a mistrial.
 
 
 38
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Altamirano-Ramirez argues that the heroin within the jacket's lining was not in his control because access to it required cutting open the jacket with a knife. We reject this contention. The fact that the inside of the jacket lining was not easily accessible did not place it outside of his control. Cf., United States v. Andersson, 813 F.2d 1450, 1456 (9th Cir.1987) (search incident to arrest of closed suitcase valid)
 
 
 [2]
 Altamirano-Ramirez's reliance in this regard on United States v. Chadwick, 433 U.S. 1 (1977), is misplaced. Chadwick did not involve a search incident to arrest and thus is not controlling in cases where the search was incident to arrest. Belton, 453 U.S. at 461-62
 
 
 [3]
 We express no opinion as to whether actual destruction of the jacket, if necessary to ascertain what was inside, would have been reasonable
 
 
 [4]
 Defendant's reliance on United States v. Soyland, No. 91-50581 (9th Cir. Sept. 2, 1993) is similarly misplaced. Soyland did not involve a search incident to an arrest, and thus is irrelevant to the search at issue here
 
 
 [5]
 Altamirano-Ramirez relies on United States v. Padrone, 406 F.2d 560 (2d Cir.1969), and United States v. Lewis, 511 F.2d 798 (D.C.Cir.1975) to support his contention that a new trial is warranted. In each of these cases, however, the prosecution's failure to turn over records of the defendant's statements may have affected the defense's decision whether to call the defendant himself to testify. In each case, the defendant already was on the stand and had already given testimony that was directly contradicted by the undisclosed statements in the prosecution's possession. The prosecution then attempted to use those statements to impeach the defendant's testimony. The resulting damage to the defendant's credibility and case may well have been severe
 In contrast, the Rule 16 violation here influenced, at most, the defense's decision to call Ignacio to testify. As discussed above, this consequence did not prejudice Altamirano-Ramirez's defense in any way.